DOMESTIC TELEGRAPH AND TELEPHONE COMPANY &C.,
appellant.

*v.*

METROPOLITAN TELEPHONE AND TELEGRAPH COMPANY
et al., respondents.

On appeal from the order of the vice-chancellor, refusing a preliminary injunction, on bill and answer.

The opinion of Vice-Chancellor Van Fleet, who advised the order, is reported in *Domestic Tel. Co.* v. *Metropolitan Tel. Co.,* *12 Stew. Eq. 160.*

No opinion on behalf of the majority of the court affirming the order was delivered in this court.

*Mr. Henry Young,* for appellant.

The bill contains two prayers.   The first prayer is :

" That the Metropolitan Telephone and Telegraph Company may be decreed specifically to perform the contract so made or entered into by and between the Bell Telephone Company of New York, and assumed by the Metropolitan Telephone and Telegraph Company, with the assent of your orator, by which your orator acquired the exclusive right to use the Bell telephone in its said territory ; and that the Metropolitan Telephone and Telegraph Company may be decreed to grant and execute with your orator a renewal of your orator's contract or license, or a new contract, to carry on said business in accordance with the terms of said contract, upon such terms as may be determined by this court."

The second prayer is as follows :

" And that the said Metropolitan Telephone and Telegraph Company, and the New York and New Jersey Telephone Company, their officers, agents and workmen, may be enjoined from removing the telephones now in the complainant's possession ; from refusing to deliver to the complainant such additional telephonic instruments and apparatus as complainant may, from time to time, require for the extension of its business ; from interrupting the communication between complainant's districts and other districts ; from establishing a district telephone exchange, and building, erecting and maintaining telephonic lines or wires, poles and fixtures in complainant's territory for the purpose of using the Bell telephone, or any improvement or modification of the same, and from interfering in any way with the business and property of the complainant in said territory."

(1) We insist that both of these defendants had full notice of complainant's contract at the time they took the assignments, under which they claim the right to supersede the complainant in the Newark district, and that they are bound by its terms.

(2) That the New York and New Jersey Telephone Company, one of the defendants, is but a licensee of the Metropolitan company, and, if it be permitted, proposes " to conduct the

business of a telephonic exchange" in the Newark district for the Metropolitan company, in the sense in which this language is used in the complainant's contract, as already explained.

(3) That the Metropolitan company, being the successor of the Bell company of New York, should be decreed to specifically perform its contract with the Domestic company, it being admitted that said Metropolitan company does not desire to conduct, itself, the business of a telephonic exchange in the Newark district, and that this contract, by the admission of the defendants, and the proof adduced on the part of the complainant, is a contract to renew the license; and

(4) That if the court should have a doubt as to the right of the complainant to obtain, ultimately, a decree for specific performance, still the complainant is entitled to an injunction to restrain the New York and New Jersey company from violating that clause in the complainant's contract, which provides that it shall have the right to acquire a renewal of its license under the circumstances which exist is this case.

(1) The New York and New Jersey Telephone Company is but a licensee of the Metropolitan company. The contract under which it is operating the New Jersey district outside of Newark, declares in exact language that it is a sublicensee, and states the terms under which it holds of the Metropolitan company. If this company should be permitted now to operate the Newark district also, it would operate it for or in the stead of the Metropolitan company under this license, and so violate an express covenant in the complainant's agreement.

(2) The further conclusion is manifest that both these defendants-had actual and precise knowledge of the complainant's rights, and that in the agreement between themselves they did not deem it safe to overlook or disregard the contingency of the Domestic company obtaining a renewal of this contract.

(3) It further appears that the defendants admit that the right of complainant under its contract to acquire, before any other company, a license to conduct such telephonic business in the Newark district, is a right to a renewal of its contract.

The Metropolitan Telephone and Telegraph Company is

19

bound by the covenants in the complainant's contract, especially as it took an assignment with notice.

The case most nearly analogous to that we are considering, is an agreement of renewal contained in a lease. *Taylor on Land. and Ten. 237.*

A covenant by the lessor that he would renew at the end of his term, has been adjudged to run with the land, and to bind the grantee of a reversion. So a covenant to renew at the request of the lessee, has been held in equity to run with the estate, and to oblige the lessor to renew at the request of the lessee's executors. *Roe* v. *Hayley, 12 East 469.*

This familiar principle is further illustrated in the cases of *Richardson* v. *Sydenham, 2 Vern. 446 ; Earle Brook* v. *Buckley, 2 Ves., Sr., 498 ; Iggledon* v. *May, 9 Ves. 325 ; Wilkinson* v. *Pettit, 47 Barb. 230 ; Piggot* v. *Mason, 4 Paige 412 ; Kerr on Inj. 531.*

"The question," says Lord Cottenham, in *Tuck* v. *Moxhay, 18 L. J. (Ch.) 83,* "is not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased." *De Mattos* v. *Gibson, 4 De G. & J. 282 ; Messageries Imperiales* v. *Baines, 11 W. R. 322 ; S. C., 7 L. T. (N. S.) 763 ; Earl of Lindsley* v. *Great Northern R. R. Co., 10 Hare 643 ; New York and Greenwood Lake R. R. Co.* v. *Stanley, 7 Stew. Eq. 55, and 8 Stew. Eq. 28 ; Haughwout* v. *Murphy, 6 C. E. Gr. 118.*

The vice-chancellor says : " Construed for the complainant as favorably as its language will warrant, it is manifest that all the covenant gives the complainant is the first right to make a bargain for a new license. Such covenant cannot be enforced in equity."

No authority is cited in support of the view, and it is submitted that it is contrary to the established rules. The case of *Cutting* v. *Dana, 10 C. E. Gr. 265,* and other cases already cited, fully sustain the position that a court of equity may, in proper cases, enforce the performance of contracts of this character.

It is evident, however, that the vice-chancellor concludes that

the contract in question cannot be enforced, because he thinks that it is not sufficiently definite in its terms.

But is this true? Adopting the most rigid construction against the complainant, it is manifest that there is nothing uncertain about the proposition we seek to have enforced. That proposition is positive and unambiguous. It is that the Metropolitan company should be compelled, in conformity with the strict letter of its contract, to fix the terms under which the complainants may acquire a new license in the Newark district.

It does not appear, nor can it appear, at this stage of the case, that the terms so fixed would not be accepted by the complainants.

If it be said that under such circumstances the Metropolitan company may fix such exorbitant rates as would render their acceptance impossible, I answer :

(1) The court should assume that the defendants will carry into effect not only the letter but the spirit of their agreement, especially as the Metropolitan company has bound itself, as will presently appear, in its contract with the parent organization, not to exact more than certain fixed and definite charges from its sublicensees ; and

(2) A court of equity should not withhold its hand until it has exhausted its power.

If the court should decree specific performance, and it hereafter appears that the terms fixed by the Metropolitan company are exorbitant, it may be (in the view of the case which we are now presenting) that a court of equity cannot change them. But it should not refuse to exert all the power that it possesses up to that time. *Kerr on Inj. 293 ; Jewett* v. *Dringer, 3 Stew. Eq. 310 ; Docker* v. *Somes, 2 Myl. & K. 674.*

Observe that, by the contract in question, the charges for the use of telephones on renewal were not to be fixed by the parties. If such had been the agreement and the parties failed to agree upon the price, the court could not enforce the contract, because the parties had failed to agree in a material particular. In such a case the court is powerless to ascertain, by extrinsic methods, what would be proper charges for renewal, and then enforce the

contract. For that would be enforcing, not the contract which the parties had made, but some other contract. *McKibbin* v. *Brown, 1 McCart. 1, 498 ; Potts* v. *Whitehead, 5 C. E. Gr. 55 ; Whitlock* v. *Duffield, 26 Wend. 55.*

In the case last cited the renewal was to be upon terms which the lessor might think proper, and the lessee should approve. This case is relied on by the defendants, yet, in effect, it provides for an agreement between the parties, and falls within the rule stated.

But there is a well-recognized distinction between such cases and those where it was clearly the understanding and agreement of the parties that the price fixed for renewal should be fair, even though a particular method of fixing the price be stated in the agreement which provides for renewal.

Courts find no difficulty in enforcing the performance of contracts, if it can be done consistently with the obvious intention of the parties. *Fry on Spec. Perf.* § *217 ; Gourlay* v. *Duke of Somerset, 19 Ves. 529 ; Emery* v. *Wade, 5 Ves. 846 ; Van Doren* v. *Robinson, 1 C. E. Gr. 256.*

" Where the contract is that the land should be conveyed \* \* \* at a fair valuation, the court will direct the valuation to be made by a master, and will enforce the execution of the contract. This class of cases has given rise to some conflict of opinion, and the line which marks the limits of the court's exercise of jurisdiction is not fairly defined. The true principle seems to be that whenever the price to be paid can be ascertained, in consistency with the terms of the contract, performance will be enforced." *Jackson* v. *Jackson, 19 Eng. L. & Eq. 545 ; Parkhurst* v. *Van Cortlandt, 14 Johns. 15 ; City of Providence* v. *St. Johns Lodge, 2 R. I. 46 ; Lovering* v. *Fogg, 18 Pick. 540.*

Certainly no difficulty can arise from the fact that the term for which the renewal shall be made is not expressed in the agreement. *Fry on Spec. Perf.* § *324 ; Piggot* v. *Mason, 1 Paige 412.*

Where a contract is made between two persons for the benefit of the third, to which he is a stranger, such third person is entitled to equitable redress for the violation thereof. *Burr* v. *Beers, 24 N. Y. 178 ; Lawrence* v. *Fox, 20 N. Y. 268 ; Crowell*

v. *Currier, 12 C. E. Gr. 152 ; Kirkpatrick* v. *Peshine, 9 C. E. Gr. 214.*

But it is not necessary that I should consider further the question whether or not this court will ultimately decree specific performance of this contract. It is enough if the complainants have presented a *prima facie* case. *High on Inj.* § *708 ; Great Western Railway Co.* v. *Benningham and Oxford Junction R. R. Co., 2 Phil. 597 ; Powell* v. *Lloyd, 1 Y. & J. 427 ; Atwood* v. *Barham, 2 Russ. 186 ; Boston Franklinite Co.* v. *New Jersey Zinc Co., 2 Beas. 215 ; Fulton* v. *Greacen, 9 Stew. Eq. 216 ; New Jersey Zinc and Iron Co.* v. *Trotter, 11 Stew. Eq. 3 ;* see, also, *Scott* v. *Ames, 3 Stock. 261 ; Greenin* v. *Hoey, 1 Stock. 137 ; Stick* v. *Hutton, 3 Stew. Eq. 579 ; Pope* v. *Bell, 8 Stew. Eq. 1.*

But (4) there is another most important consideration, to which I desire to direct the attention of the court. The covenant in the contract is that the Domestic company should have the first right to acquire this license or agency. This license was to be exclusive, of course; otherwise, nothing would be gained by "having the first right."

But, in this covenant, there is a clear implication that no other company should conduct the telephone business in the Newark district until the Domestic company had had an opportunity to acquire a new license. Yet the defendant, the New York and New Jersey Telephone Company, in violation of complainant's contract, and with notice thereof, is attempting to establish a telephone exchange in this district.

It is manifest that the court should restrain this defendant from doing what, by the covenant in this contract, it may not lawfully do.

There was, until a comparatively recent period, much doubt, in the authorities, as to whether a court would enforce, by injunction, the negative part of an agreement containing both affirmative and negative stipulations, unless the affirmative part of the agreement was of such a nature that it could be specifically enforced by decree. *Dane* v. *Newdigate, 10 Ves. 192 ; Lumley* v. *Wagner, 1 De G., M. & G. 604; Kerr on Inj. 521–*

*523; Montague* v. *Flocton, L. R. (16 Eq.) 189;* see, especially, *Piggott* v. *Stratton, 1 De G., F. & J. 33; 3 Pomeroy Eq. Jur. 374 § 13 note 2; Manhattan Manuf. Co.* v. *New Jersey Stock Yard Co., 8 C. E. Gr. 161.*

These authorities abundantly establish the rule that a court of equity will restrain a defendant from violating the implied negative provision of a covenant, even though the affirmative provision cannot be specifically enforced.

The defendant, the New York and New Jersey Telephone Company, admits, in its answers, that it proposes to conduct the telephone business in the Newark district. Such an attempt at present is in clear violation of the complainant's contract, and should be restrained by this court.

The court will not fail to remark that if the injunction which we seek be denied, the business of the complainants will be at once sacrificed; its telephones will be removed; its plant isolated, and an injury sustained which cannot be repaired, even if the court, on final hearing, should grant the prayer of the bill.

*Mr. Thomas N. McCarter,* for appellant.

The first and principal ground on which defendants place their contention that the court cannot restrain them as prayed by the complainant, is that our bill is a bill for specific performance, and that the contract of which we pray such performance is too uncertain and vague to be the subject of such relief.

The contention is, that because the agreement provides that the Metropolitan company is to fix the terms of the renewal, such provision renders it incapable of enforcement.

We will not attempt to impugn the authority of the numerous decisions cited by defendants' counsel, or to overturn the well-established rule laid down in *McKibbon* v. *Brown, 1 McCart. 13,* that a court will not make a contract for the parties, or compel them to perform one to which they have not themselves agreed.

We do not ask the court to decree the performance by the Metropolitan company of anything which it has not distinctly

agreed to do.   If, when all that is done, it turns out that we cannot have relief, it will be time enough so to decide.

The proper rule is laid down in *Pom. on Cont.* §§ *148, 149.*

The point of this is, that when the parties have not fixed the price, but have provided in the contract a method of determining it, the contract is never held incomplete until the stipulated method is unavailable, or, having been resorted to, has failed.

This is fully recognized by Chancellor Green, in *McKibbon* v. *Brown, 1 McCart. 13, 20 ; Brown* v. *Bellows, 4 Pick. 184* ; see, also, *Morgan* v. *Millman, 18 Eng. L. 210 ; Mules* v. *Gervey, 14 Ves. 406, 408 ; Jackson* v. *Jackson, 19 Eng. L. & Eq. 546 ; Gregory* v. *Michele, 17 Ves. 330–332 ; Dike* v. *Green, 4 R. I. 297.*

The latter authorities cited show how ready a court of equity will be in all proper cases to interpose, to fix a price, even when, by accident or by the inequitable procurement of the other party, the means pointed out by the contract have failed.

Thus far I have discussed the question as if this case were on final hearing.   Such is not the case.   All the cases cited, except *McKibbon* v. *Brown,* from New Jersey, were on final hearing. In *McKibbon* v. *Brown,* the impossibility of coming to an agreement had been reached.   The parties had failed, and there was no other resort.   So, in the case of *Whitlock* v. *Duffield, 2 Edw. Ch. 366,* there was an entire and total failure to agree.   Can it be pretended that in that case, if the tenant had accepted the terms offered by the landlord, there would have been any doubt about the terms ; or that after their acceptance the lessor could have flown from his offer ?   Would not specific performance have been decreed in such a case ?   Why not ?   Where is the uncertainty ? Has not that which was before uncertain been rendered certain in the very mode pointed out by the contract ?   At any rate, could he, after that, turn around and lease it to another on terms to which we were willing to agree, or on terms more favorable to the tenant ?

From the time the contract is made the bargainor holds the property to which it relates, subject to a trust in favor of the

bargainee, which a court of equity will follow and enforce against any vendee with notice, no matter how circuitous, dark or crooked the road may be which the court has to travel to accomplish it. *Pigott* v. *Stratton, 1 De G., F. & J. 33; Thornton* v. *Court, 3 De G., M. & G. 293.*

Our argument thus far has been in support of our right to a decree for a specific performance of the affirmative part of this covenant.

Should we fail in that, it by no means follows that we are not entitled to an injunction.

The cases cited in Mr. Young's brief show that courts now indirectly enforce the agreement negatively, by enjoining its breach, and forbidding the doing of the acts which, without the contract, would be lawful.

I refer further on that point to *Dovell* v. *Bennett, L. R. (22 Ch. Div.) 335.*

In this case a contract for the sale of chattels to plaintiff contained an express stipulation not to sell to any other manufacturer. The court granted an injunction to restrain the breach of the negative stipulation, although the affirmative part of the contract was one of which specific performance would not have been decreed.

Fry, J., discusses all the cases, especially the case of *Lumley* v. *Wagner, 1 De G., M. & G. 604;* see, also, *Western Union Tel. Co.* v. *Union Pac. R. R. Co., 3 Fed. Rep. 429.*

On the point that an injunction will be retained until the final hearing, in addition to Mr. Young's cases, are *Western Union Tel. Co.* v. *St. Jos. & W. R. R. Co., 3 Fed. Rep. 434 § 5; At. & Pac. Tel. Co.* v. *U. P. Ry. Co., 1 Fed. Rep. 754; Am. Union Tel. Co.* v. *U. P. Ry. Co., 1 McCrary 188.*

In *McKibbon* v. *Brown, 1 McCart. 13,* the court held, plainly, that the contract to renew could never be enforced, because too uncertain, and dissolved the injunction, but said: "If I had any real doubt, I would hold the injunction till final hearing." *New Jersey Zinc and Iron Co.* v. *Trotter, 11 Stew. Eq. 3.*

*Mr. J. D. Bedle,* for respondents.

I. This bill is filed to compel the making of a new contract for renewal of a license and business agreement, under a clause destitute of all terms, and containing not even a single provision upon which to base a contract.

Section 11 of the original contract reads as follows :

" If, at the expiration of the above period of five (5) years, the party of the first part shall not desire to conduct the business of telephonic district exchange directly within said district of the party of the second part, or of merging said district into some other district, but shall, on the contrary, desire to have such business conducted for it, then and in such case the party of the second part shall have the first right of acquiring the license or agency to conduct such business, at such rate or rental, and upon such terms, as may then be fixed and determined by said party of the first part."

The effect of the covenant in question is settled by two cases, *McKibbon* v. *Brown, 1 McCart. 13; S. C., 2 McCart. 498; Duffield* v. *Whitlock, 26 Wend. 55.*

It is said by Chancellor Green, in *Van Doran* v. *Robinson, 1 C. E. Gr. 259,* that *McKibbon* v. *Brown* was warmly contested both in the court of chancery and in the court of appeals. There was no opinion written in the court of appeals, but that of the court of chancery is exhaustive. The bill was filed to compel a renewal of a lease. The stipulation upon which the claim was based gave the privilege of re-leasing upon the same terms, except that the rent should be $7,000 per annum, and the lessee should purchase the furniture at cost, less $250, and that the times (or terms) or credits to be given by the defendant to the complainant should be the subject of arrangement between the parties.

It will be seen from the case that the difference between the parties was only one of terms as to the payment of the price of the furniture, which was about $18,000. The parties were unable to complete their negotiations as to these, the complainant insisting that the terms exacted by the defendant were unreasonable and unjust, and the court was asked to fix such times and credits of payment as the court should deem reasonable and just.

The preliminary injunction was dissolved on motion, the court saying, among other things, that "no specific performance of a contract can be decreed in equity unless the contract be actually concluded and be certain in all its parts. If the matter still rests in treaty, or if the agreement in any material particular be uncertain or undefined, equity will not interfere."

*Duffield* v. *Whitlock* is found first reported in *2 Edw. Ch. 366*, where McCoun, V. C., overruled a demurrer to the bill, but he was afterwards overruled both in the court of chancery (*1 Hoff. Ch. 110*), and in the court of appeals (*25 Wend. 55*).

To show how rigidly the rule that no contract will be enforced, of which any material part has to be settled by negotiation between the parties, has been adhered to in this state, I refer to the following cases: *Brown* v. *Brown, 6 Stew. Eq. 650; Potts* v. *Whitehead, 5 C. E. Gr. 55; S. C., 8 C. E. Gr. 512.*

Reference is also made to the following cases in New York: *Tracy* v. *Albany Ex. Co., 7 N. Y. 474; W. Trans. Co.* v. *Lansing, 49 N. Y. 499.*

II. But it is said that the complainant may have sufficient assistance from paragraph 16 in the contract—

"In the event of disagreement between the parties hereto arising out of this contract or any clause thereof, such matter of disagreement, unless it can be mutually and satisfactorily adjusted, shall be submitted to and determined by arbitration in the manner as provided in section 10 hereof."

The opinion of the vice-chancellor, it seems to me, is conclusive that this provision 'is inapplicable to the paragraph under which the new license or contract is claimed.

Courts of equity will not enforce specific performance of an agreement to refer matters in controversy. Nor will they compel arbitrators to make an award. *Story's Eq. Jur.* § *1457; McKibbon* v. *Brown, 2 McCart. 498; Street* v. *Rigby, 6 Ves. 815.*

III. Paragraph 11 of the contract could not prevent the Bell Telephone Company of New York from selling and disposing of its business and its rights to the use of the Bell patent. The

business of that company and its rights under the patent were transferred to the Metropolitan Telephone and Telegraph Company, which company now owns the territory and business in the city of New York, while that part thereof within the state of New Jersey and Long Island is owned by the New York and New Jersey Telephone Company, and came to it through intermediate transfers from the Metropolitan Telephone and Telegraph Company.

There is no covenant, express or implied, that the Bell company should continue to own the license or patent. The implications are to the contrary, and that the Bell company might become so situated that no new contract could be expected to be made at the expiration of the five years.

What are the conditions in paragraph 11, of having "the first right of acquiring the license or agency to conduct such business?"

*First.* That the party of the first part shall not desire to conduct the business of telephonic district exchange directly within said district.

*Second.* Or, of merging said district into some other district.

*Third.* But shall, on the contrary, desire to have such business conducted for it.

The Metropolitan company became absolute owner of the territory described as aforesaid, and of the rights and property of the Bell Telephone Company of New York therein, and had obtained from the American Bell Telephone Company, the parent company, a license covering the whole of said territory, and within which it owned and operated very extensive and valuable telephone lines.

This condition of things was absolutely inconsistent with any obligation arising out of paragraph 11 of the complainant's contract to renew the agreement. The Bell Telephone Company did not desire to have the business conducted for it, for it sold out the same, and all its license rights had become vested in the Metropolitan company. This paragraph was not restrictive upon the power of sale and transfer, and the covenant was alone personal to the Bell Telephone Company.

In the very nature of things the covenant did not run, so to speak, against the vendee. It in no sense compelled the Bell company to continue to be owner, or, in making a sale or transfer, to require the vendee to create the complainant its agent or licensee, and the same principle would alike apply to all subsequent transfers.

IV. The title of the New York and New Jersey Telephone Company (the other defendant) was acquired from the New Jersey Telephone Company, which latter company obtained its title from the Metropolitan Telephone and Telegraph Company and the Metropolitan District Telephone Company. The Metropolitan Telephone and Telegraph Company transferred its property and business outside of the city of New York to the Metropolitan District Telegraph Company, and that part of the same in New Jersey was transferred by the Metropolitan District Telegraph Company to the New Jersey Telephone Company.

The New Jersey company became entitled to the territory included in the Newark district, and to merge the same with the rest of the territory in New Jersey, unless an extension or renewal should be compelled.

The New Jersey company became entitled to the Newark territory, subject only to any right that the complainant might have under its contract to compel a new one.

The New Jersey company became consolidated with the New York and New Jersey Telephone Company, which latter company had absorbed the Long Island territory and company, so that the defendant, the New York and New Jersey Telephone Company, now embraces within its territory the whole of New Jersey within the radius aforesaid, including Monmouth county and Long Island aforesaid.

By an agreement of June 15th, 1883, the Metropolitan Telephone and Telegraph Company assented to the consolidation aforesaid and the acquiring of the property mentioned in the two agreements of October 2d, 1882, by the New York and New Jersey Telephone Company.

The New York and New Jersey Telephone Company is

entitled, by virtue of its transfers and contracts, to all the rights of the Metropolitan Telephone Company in the whole of the New Jersey territory, and if it is subject to the liabilities of the latter company, it is also entitled to its benefits and privileges; therefore

V. If the New York and New Jersey Telephone Company desires to conduct the business of telephonic district exchange directly within the Newark district, or to merge said district into some other district, and does not desire to have such business conducted for it, then there can be no pretence whatever of any right in the complainant to a new contract.

The following dissenting opinion was delivered by

MAGIE, J.

My examination of this case constrains me to a conclusion different from that reached by a majority of this court. It seems proper that I should briefly state the reasons for my conclusion.

Appellant invoked the aid of a court of equity for relief upon a contract between it and the Bell Telephone Company of New York. The contract provided for the conduct of a telephone business in a certain district for a period of five years, and contained the following clause:

"11th. If, at the expiration of the above period of five (5) years, the party of the first part [the Bell Telephone Company of New York] shall not desire to conduct the business of telephonic district exchange directly within said district of the party of the second part, or of merging said district into some other district, but shall, on the contrary, desire to have such business conducted for it, then and in such case the party of the second part shall have the first right of acquiring the license or agency to conduct such business at such rate or rental, and upon such terms, as may then be fixed and determined by said party of the first part."

Appellant's claim for relief is based on the provisions contained in this clause. In aid of the relief it sought, it applied to the court below for a preliminary injunction, which was refused, and the propriety of such refusal is the question presented by this appeal.

I shall assume that if appellant appears, upon the facts disclosed in its bill and the answers of respondents, and the affidavits annexed to each, to be entitled to any equitable relief, looking to the future conduct of the business referred to in this clause, a preliminary injunction should have issued. For it is manifest that any relief possible to be accorded appellant at the final hearing would be valueless if, in the meantime, it could be ousted from its business, and its patrons and customers diverted to other companies.

The question then is, Was appellant entitled to any relief upon the facts shown by the pleadings, when the application for a preliminary injunction was made?

I am constrained to conclude that appellant was entitled to equitable relief under this clause.

In the first place, it clearly appears, in my judgment, that the Bell Telephone Company of New York did not desire to conduct the business of telephonic district exchange itself within the district in question, but did desire to have such business conducted for it. Its transfers of interest and license were so made that this business was considered, and the transferees took what interest they acquired expressly subject to the right which appellant might have to compel an extension or renewal of its contract.

In the second place, it also appears that the Bell Telephone Company has not desired to merge this district with any other. The various contracts show a design to include this district with other territory under the control of one corporation, but I can perceive nothing to indicate that the district in question is to be enlarged or merged with any other, within the meaning of this clause.

The result is, that appellant, by the express terms of the contract, is entitled to the first right to acquire the license or agency to conduct such business—*i. e.*, the business which it had been conducting under the same contract.

But it is urged that such a contract cannot be enforced for want of certainty in respect to its terms. In my judgment, the objection cannot prevail. It is true that the clause contains the

extraordinary stipulation that the license or agency which appellant has the first right to acquire, is to be on such terms as shall be fixed and determined by the Bell Telephone Company.

In dealing with this most unusual contract, I do not propose to examine the point pressed on the argument, respecting the applicability of arbitration clauses in this contract, to a case of disagreement respecting the terms for the future conduct of the business. Nor do I enter into the question of the court's power, if the terms fixed shall be unconscionable. Taking the language as it is, it is a contract to give an option to acquire a contract to do a specified work on terms which are to be fixed by one of the parties. If those terms have been fixed in the prescribed manner, then there is no longer any uncertainty, and the contract becomes capable of specific performance, if the party entitled to the option accepts the terms and asks performance.

The contracts disclosed by the answer are such that it is argued that terms on which the business covered by this clause may be conducted, have been fixed. Whether these terms are such as appellant can perform is a question not to be considered. If they relate to the business in question—include no more and exclude none—then appellant has a first right to acquire the business on those terms. It is premature to say it cannot do what it has had no opportunity to attempt to do.

In my judgment, the contracts do disclose the terms on which this business may be conducted. Upon those terms appellant has a right to a contract for the conduct of this business; in other words, to a specific performance of the contract for a contract.

Such relief can be afforded under appellant's bill.

But, if I entertained a doubt whether the terms on which the business in question may be conducted in the future have been fixed, I should still conclude that appellant is entitled to some relief. In my judgment, it has a right to require them to be fixed in pursuance of the agreement, and thereupon to enforce its first right to take the business on these terms.

Where contracts have left terms to be fixed by arbitration, and one of the contracting parties has refused to enter into the arbi-

tration according to the contract, courts of equity have declined to compel the refusing party to enter into the arbitration he has contracted for. This refusal, I apprehend, is grounded on the general rule that courts of equity will not specifically enforce an agreement to submit any matter of difference between parties to such a tribunal. But the contract before us differs. The contracting party has stipulated to fix terms not by the adjudication of others, but by its own judgment. I can perceive no reason why it should not be compelled to perform this solemn stipulation. The court should not be deterred from according at least this measure of relief upon this unusual contract, by the suggestion that terms will be fixed such as will render acceptance impossible. We have no right to assume that the respondents will fix unconscionable or exorbitant terms. At all events, appellant has a right to know the terms fixed. If they are such that he cannot accept them, and the business is afterwards granted to others on easier or better terms, it can hardly be possible that appellant would be remediless.

I conclude, therefore, that appellant is entitled to some relief in either view that can be taken of the subject, and, therefore, the preliminary injunction asked for ought to have been allowed. I am constrained to vote for the reversal of the decree below.

For affirmance—THE CHIEF-JUSTICE, DIXON, PARKER, REED, CLEMENT, COLE, WHITAKER—7.

For reversal—DEPUE, MAGIE, SCUDDER, BROWN, PATERSON—5.