WILLIAM G. THOMAS, respondent,

*v.*

MAY (MARY) E. THOMAS, appellant.

[Decided May 20th, 1929.]

———

On appeal from a decree of the court of chancery advised by Vice-Chancellor Buchanan, who filed the following opinion:

"The husband petitions for divorce alleging adultery. The wife denies, and recriminates; she also counter-claims on a separate agreement whereby the husband agreed to pay her $250 a month, alleging default in payment since August, 1927, and asking decree for installments past due and for future performance.

"On the charge of recrimination the proofs wholly fail.

"On the husband's charge of adultery the proofs are such as to convince the court that the charges are true. No witnesses testify to observance of the act itself, but it appears by witnesses on both sides that co-respondent lived with the wife in the same house for a number of months—and for a considerable portion of the time no one else lived with them; that he came there at her solicitation. She says it was because she needed the money for his board, but this is obviously untrue, for she says she received but ten dollars ($10) a week,

and at about the same period of time (before and after) she says she kept her brother for some weeks without pay, and a nephew who paid a rate which could not have equalled cost.

"The wife was advised by the husband's brother not to keep the co-respondent as a boarder alone with her; she procured a letter from an attorney advising her that there was nothing wrong in this alone, and kept this in her safe deposit box—although she says that she did not solicit the letter and was surprised to receive it.

"Prior to this time it appears by the testimony of witnesses, one at least of whom was disinterested, that the co-respondent had spent the night occasionally at the wife's apartment.

"The pair continued to live together for sometime even after they were arrested, after a visit to the house by the husband and detectives.

"The wife and her chief witnesses became involved in some significant contradictions, and the fact that they were testifying falsely was quite obvious even to an inexperienced observer. This in itself—the putting forward of false explanations—is indicative of guilt and corroborative of the charges.

"The falsity of testimony was particularly obvious in the case of the co-respondent. He was uneasy, shifting and his replies grew constantly fainter and more hesitant. Being asked if his first wife obtained a divorce from him on the ground of adultery he at first denied it, and then later said he didn't know. At different times he made several different replies to the question as to why he finally moved away from living in the house with the wife; once he said it was because he wanted to; later he said it was at Mrs. Thomas' request; still later he said it was because of the arrest—although he could not explain why it had taken five months from the time of the arrest to take that step; and finally he said it was because he had become engaged to, or fallen in love, with another woman (whom he subsequently married).

"It seems unnecessary further to particularize as to the evidence, although there is much more than that to which allusion has herein been made.

"It is urged by the wife that although desertion by the husband was not pleaded by the wife by way of recrimination, yet it appears by the evidence and should bar decree for the husband. The separation agreement, however, effectually answers that argument, for it shows that the separation was not desertion. The proofs do not by any means show—nor even indicate—that the separation agreement was forced upon the wife by the husband.

"The husband is entitled to decree for divorce on his petition.

"As to the counter-claim, it is the law in this state that adultery by the wife is not legal justification for refusal by the husband to pay support to her under a separation agreement—unless in such agreement the promise of payment is conditional upon the wife remaining chaste. The agreement in the instant case contains no such provision. The wife is therefore entitled to the monthly installments ($250 per month) from August, 1927, until the decree of divorce, which will terminate liability for further payments under the agreement.

"It appears that a little over a year prior to the commencement of the present suit, the wife (unsuccessfully) sued the husband for divorce alleging desertion, and it is urged on behalf of the husband that this was a breach of the covenant in the separation agreement that neither would sue the other for living separate and apart—and was such a breach as to terminate further liability of the husband under the agreement.

"This contention seems unsound, however, in view of the fact that the payment is not, by the agreement, conditioned on the performance of the promise not to sue, and in view of the further fact that in legal contemplation the promise of payment is looked upon as a substitute for the legal duty of the husband to support the wife."

*Mr. Ellis L. Pierson,* for the respondent.

*Mr. John A. Matthews,* for the appellant.

Per Curiam.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Buchanan.

*For affirmance*—The Chief-Justice, Trenchard, Parker, Kalisch, Black, Campbell, Lloyd, White, Van Buskirk, McGlennon, Kays, Hetfield, Dear, JJ.   13.