75 N.J. Super. 492 (1962)
183 A.2d 473
THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, A CORPORATION, PLAINTIFF,
v.
H. HARRISON HUSTER, DEFENDANT-APPELLANT, AND HATTIE HUSTER, DEFENDANT-CROSSCLAIMANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 1961.
Decided July 16, 1962.
*496 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. Charles M. Grosman argued the cause for appellant.
Mr. Albert B. Jeffers, Jr., argued the cause for respondent (Messrs. Jeffers, Mountain and Franklin, attorneys; Mr. Jeffers, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
H. Harrison Huster appeals from a Chancery Division judgment in favor of his former wife Hattie on her crossclaim in plaintiff's action to foreclose its mortgage on property owned by the Husters as tenants by the entirety. We are not concerned with the foreclosure proceedings which, in due course, proceeded to judgment and sale. The appeal on the crossclaim concerns the enforceability of a support agreement entered into between the parties. A proper understanding of the question requires some detailing of the background facts, chronologically developed.

I.
The Husters were married May 6, 1933. Three children were born of the marriage: Harrison, Jr., Brian and Diane. The parties separated January 28, 1954 and lived apart thereafter. On June 14, 1954 they executed a separation agreement. Article First recited that the matrimonial home in Madison, N.J., was owned by the parties as tenants by the entirety, and if sold by mutual agreement or after a divorce granted to either, the net proceeds were to be divided equally between them. Article Second read as follows:
*497 "Husband will pay the monthly charges for reduction of principal of the presently existing mortgage on the home real estate at No. 42 East Lane, Madison New Jersey, the interest charges on said mortgage, the municipal taxes levied against said home real estate and the premiums for fire insurance covering said home real estate, totalling approximately $160. monthly.
Such payments by the husband shall continue as long as the parties continue to own said home real estate as tenants by the entirety as governed by Article First supra."
And Article Third provided, in pertinent part:
"Husband will pay to the wife for her support and maintenance during the joint lives of the parties, whether or not they continue to be husband and wife, so long as wife does not remarry, and in addition to any sums paid by husband under Article Second, supra, the sum of $150. per month in semi-monthly instalments of $75. on the first and fifteenth days of each month.
In the event that the home real estate at 42 East Lane, Madison, New Jersey, be sold as described in Article First, supra, husband will pay wife as additional support and maintenance the monthly sum of $160. which he had paid for mortgage interest, principal, taxes and insurance as provided in Article Second."
Article Fourth required Huster to pay his wife $300 a month for the support and maintenance of the children of the marriage, and as each reached majority or was emancipated, the monthly payment was to be reduced by $100. Mrs. Huster was to have the custody of the children under Article Fifth, with reasonable visitation rights accorded the husband, who agreed to provide such funds as were reasonably necessary in addition to those set forth in Article Fourth to complete their education at schools and colleges determined by the parties to be suitable. By Article Eighth Huster was to pay all reasonable legal fees and expenses contracted by his wife in connection with the agreement.
The agreement also recited that it had voluntarily been entered into by the parties on the advice and under the supervision of their respective, independently selected counsel, each of the parties declaring that the agreement was "in all respects fair, equitable, just and reasonable."
*498 Despite the existence of the separation agreement, the wife on July 11, 1955 filed a complaint in the Union County Juvenile and Domestic Relations Court asking the court "to inquire into the marital status for the purpose of attempting to salvage her marriage; in lieu thereof to make an order upon defendant to adequately support his family consistent with the terms of the [separation] agreement noted above and in line with his net earnings." That court, on September 28 following, entered a temporary order of $75 a week for the support of the family. This was reduced to $65 a week on March 1, 1956. The $65 payments were continued by order entered September 19, 1956, which also directed the husband to pay a reasonable amount for the upkeep of the exterior of the marital home.
On December 15, 1958 Huster filed a complaint for divorce on the grounds of his wife's desertion and adultery. Plaintiff insurance company instituted its foreclosure against the Husters a month later. Mrs. Huster crossclaimed against her husband in that action, alleging that he had failed and neglected to make the monthly payments on the bond and mortgage and to pay municipal taxes, as provided in the separation agreement, resulting in a default and foreclosure. She feared the loss of her home because of her inability to pay the mortgagee's claim or to purchase the property at foreclosure sale. Claiming that her husband was financially able to make the payments and that his failure to do so was willful and malicious, she demanded judgment directing that he pay the amount due the mortgagee, and also demanded compensatory damages of $50,000 and punitive damages in the same amount. By way of answer Huster contended that the crossclaim was not actionable between husband and wife and violated R.S. 37:2-5. The foreclosure proceeded to judgment and sale on October 19, 1959.
Huster had meanwhile fallen into arrears under the existing Juvenile and Domestic Relations Court support order, and been held in contempt. He had moved to cancel *499 the arrearages and to vacate the contempt order, as well as for a change in custody and a modification of support payments. The Juvenile and Domestic Relations Court refused to cancel the arrearages and ordered Huster to purge himself by paying the $1,957.43 support money then due. It referred the applications for a reduction in support and a change in custody to the Chancery Division for hearing in connection with the pending divorce proceedings. On December 21, 1959 the Chancery Division judge sitting in matrimonial matters, after taking testimony on the husband's case, vacated the order of the Juvenile and Domestic Relations Court requiring Huster to pay $65 support weekly, and relieved him until further order "from paying any sum whatsoever to the defendant [Mrs. Huster] for her support, inasmuch as the three children of the marriage are no longer in the home of the defendant." Mrs. Huster had refused to take the stand, claiming she was not ready to proceed because her newly engaged counsel had not had time to prepare. The trial judge pointed out that he had allowed her a counsel fee so that she could engage counsel, that she had engaged in persistent delay after dismissing her former attorney, and that the court had been obliged to write her that the matter was going to proceed. After considerable colloquy, the court granted substituted counsel's request to be relieved of any further responsibility in the case and continued the matter to February 2, 1960.
We note that at the December 21, 1959 hearing Huster testified that he was then under order of the Union County Juvenile and Domestic Relations Court order to pay his wife $65 a week. The court also had before it the separation agreement of June 14, 1954, admitted in evidence. When the court took the testimony of Mrs. Huster's witnesses on April 25, 1960 (the hearing had been further adjourned to that date), her present counsel moved that the Juvenile and Domestic Relations Court order be reinstated. The motion was denied.
*500 On April 28, 1960 the trial court entered judgment nisi dismissing Huster's cause of action for desertion, granting him a divorce on the ground of his wife's adultery, and awarding him custody of the infant children. Mrs. Huster appealed to this court. The appeal did not question the vacating of the Juvenile and Domestic Relations Court support order, nor did it in any way implicate the separation agreement. We affirmed, Huster v. Huster, 64 N.J. Super. 29, decided November 22, 1960.
While the appeal was pending, and on June 10, 1960, another Chancery Division judge pretried the crossclaim feature of the foreclosure action, granting leave to Mrs. Huster to amend her crossclaim by adding a demand for specific performance of Article Third of the separation agreement, for an accounting with respect to payments not made under the provisions of Articles Second and Third, as well as for counsel fees. The amendment was to be filed and served within ten days, but this was not done until October 3, 1960.
In his answer to the amended crossclaim, Huster contended that Mrs. Huster had knowingly abandoned the terms and conditions of the separation agreement by filing a complaint in the Juvenile and Domestic Relations Court for support and maintenance, and that court had assumed jurisdiction and entered support orders from time to time. Furthermore, the matrimonial judge had specifically denied her any further support and maintenance, and she had taken no appeal from that order. Accordingly, she had made an election of remedies and was estopped from asserting any claim for specific performance of the support provisions of the separation agreement. Answering that part of the amended crossclaim demanding an accounting as to payments not made under the provisions of Article Second relating to mortgage principal and interest, taxes and fire insurance, Huster contended that he and Mrs. Huster were equal co-owners; that because of straitened circumstances he was financially unable, as she well knew, *501 to prevent the foreclosure and sale of the property; and notwithstanding the fact that she was financially able from her separate estate to protect her interest in the property, she had failed to do so. The issue of election of remedies was advanced at the trial, as it is on this appeal.
On December 5, 1960, and before the judgment nisi had become final, the Chancery Division judge who had heard the crossclaim entered judgment (1) dismissing Mrs. Huster's claim for punitive damages; (2) awarding her $2,560, representing the sum of $160 a month for a period of 16 months beginning in August 1958, during which period Huster had failed to meet his obligation under Article Second of the separation agreement; (3) awarding her $1,500, representing the sum of $150 a month for a period of ten months beginning in January 1960, during which period Huster failed to meet his obligation under Article Third; (4) directing specific performance by Huster of Article Third by paying crossclaimant $150 a month beginning November 1, 1960, and finally, (5) directing him to pay crossclaimant her taxed costs, together with a counsel fee of $300.
On this appeal Huster contends that the Chancery Division judge improperly granted specific performance of the support and maintenance provisions of the separation agreement when the matrimonial judge had theretofore, in the divorce proceedings, denied Mrs. Huster any support  in other words, she had made an election of remedies and was estopped from asserting any claim under the agreement. Appellant also argues error in granting specific performance of the agreement under the facts and circumstances of the case, not only as to support and maintenance payments allegedly in arrears and those falling due after January 1, 1960, but also as to alleged arrearages in the carrying charges on the foreclosed marital home. Further, error is claimed in awarding crossclaimant a counsel fee.

*502 II.
Appellant has not specifically argued that R.R. 4:13-1 and R.R. 4:95-3 should bar Mrs. Huster's claim, at least as to payments up to the entry of final judgment in the divorce action on January 9, 1961. However, the substance of those rules finds reflection in some of the contentions advanced in his brief and at oral argument.
R.R. 4:13-1, relating to mandatory or permissive counterclaims, provides:
"A pleading may state as a counterclaim any claim against the opposing party whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim, except that any defendant failing to set off a liquidated debt or demand, or a debt or demand capable of being ascertained by calculation, shall thereafter be precluded from bringing any action for such debt or demand which might have been set off under the provisions of this rule."
And R.R. 4:95-3 allows a counterclaim to state any matrimonial cause of action and permits the same to be filed, by leave of court, at any time prior to final judgment. Our attention has not been called to any case that has adjudicated the question of whether a wife must assert a claim based upon a support agreement when she is sued for divorce. However, in M.N. Axinn Co. v. Gibraltar Development, Inc., 45 N.J. Super. 523, 530-532 (App. Div. 1957), we discussed the question of whether a debt, liquidated or readily capable of being ascertained by calculation, must be set up by way of counterclaim in an interpleader action. We held:
"The very words `set off,' used in the rule and in N.J.S. 2A:15-48, plainly connote an action in which a plaintiff alleges a claim against a defendant and seeks a money judgment against the latter on that claim. But in an interpleader action the plaintiff does not assert a claim against any of the defendants, so that there was no claim against which plaintiff here (a defendant in the interpleader action) could have `set off' the claim alleged in this action." (Italics ours) *503 This language is applicable here. In his divorce action Huster sought nothing more than dissolution of the marriage and the custody of his children. He sought no money judgment against which his wife might have set off any claim she had under the separation agreement. This compels the conclusion that, all other considerations aside, Mrs. Huster was not obliged to assert her contractual claim for support by way of counterclaim in the divorce proceedings.

III.
Appellant's election of remedies contention reduces to this: His former wife could have asserted her right to support and maintenance under the separation agreement; instead of doing so, she sought and obtained support in the Juvenile and Domestic Relations Court, whose support order was later vacated by the matrimonial judge; she did not press her contractual claim in the divorce action when she could have done so, and therefore she could not thereafter seek specific performance of the agreement before another Chancery Division judge.
The basic flaw in this argument is the assumption that Mrs. Huster could, during the period involved, have enforced the support provisions of the separation agreement in our courts. The inherent power of courts of equity to grant specific performance of husband-wife agreements dealing with support and related matters was clearly recognized in earlier New Jersey decisions, at least down to 1932. Beginning with Apfelbaum v. Apfelbaum, 111 N.J. Eq. 529, 84 A.L.R. 298 (E. & A. 1932), and continuing through Harrington v. Harrington, 142 N.J. Eq. 684 (E. & A. 1948), our former Court of Errors and Appeals took the view that support and maintenance agreements were not subject to specific performance. See also Peff v. Peff, 2 N.J. 513, 526 (1949); Raymond v. Raymond, 39 N.J. Super. 24, 30 (Ch. Div. 1956). This change of view was completely inexplicable to equity judges, who sought to preserve the *504 inherent jurisdiction which they had so long exercised. See, for example, Cohen v. Cohen, 121 N.J. Eq. 299 (Ch. 1936); Harrington v. Harrington, 141 N.J. Eq. 456 (Ch. 1948), modified 142 N.J. Eq. 684 (E. & A. 1948); and see 10 New Jersey Practice (Herr, Marriage, Divorce and Separation) (2d ed. 1950), § 493, p. 504. Cases like Macfadden v. Macfadden, 46 N.J. Super. 242 (Ch. Div. 1957), affirmed 49 N.J. Super. 356 (App. Div. 1958), certification denied 27 N.J. 155 (1958), and Flicker v. Chenitz, 55 N.J. Super. 273 (App. Div. 1959), certification granted 30 N.J. 152 (1959), appeal dismissed by consent 30 N.J. 566 (1959), sought to escape the binding effect of the Apfelbaum line of cases. Finally, our highest court, in Schlemm v. Schlemm, 31 N.J. 557 (1960), discarded the restrictive approach of Apfelbaum, and the cases which followed it, acknowledging that there had been "an unnecessary departure from fundamental principles of equitable jurisdiction," not dictated by any sound reason or statutory policy, and not effectively serving the interests of justice. Schlemm reaffirmed the power of the Superior Court (successor to the Court of Chancery) to direct specific performance of the terms of a husband-wife support agreement to the extent that they are just and equitable. See 31 N.J., at pages 576-582, for a review of the cases preceding Apfelbaum and the return of the court to the view that equity courts had inherent power to grant specific performance of the support provisions of separation agreements.
Schlemm was argued in early December 1959 and decided February 22, 1960. Until the coming down of the decision in that case, no attorney versed in matrimonial law would have sought specific performance of the separation agreement here in question in the light of Apfelbaum and its successors. There was little or nothing in the agreement which would have given a Chancery Division judge even a fingerhold in scaling the wall which had been erected by our highest court pre-Schlemm. Specific performance was unavailable to Mrs. Huster when she went *505 into the Juvenile and Domestic Relations Court in July 1955 and when she defended her husband's divorce suit at the close of 1959.
There was no election of remedies when Mrs. Huster sought the help of the Juvenile and Domestic Relations Court. She needed support for herself and the three children of the marriage, and she went into a court where, as the trial judge observed, she could get relief more quickly and at less expense. The relief she sought was under the statute, N.J.S. 2A:4-18, and within the frame of reference of the subsisting marital relation and the continuing obligation of the husband to take care of his family. We agree with the trial judge that her turning to the Juvenile and Domestic Relations Court for relief did not negate the idea that she had some contractual rights against her husband  rights not then enforceable in the Superior Court.
We have seen that the question of support was transferred by the Juvenile and Domestic Relations Court to the Chancery Division of the Superior Court, to be dealt with in the divorce proceedings there pending, and that the matrimonial judge, after hearing the husband's case, relieved him from paying "any sum whatsoever" to Mrs. Huster for her support, by order entered December 21, 1959. But here again, the wife's right to support was considered exclusively in the light of the matrimonial relation. The court was concerned only with her rights to support under the statute, N.J.S. 2A:34-23, or such support as it might award her in the exercise of its inherent equitable jurisdiction. The court was not being asked to enforce the separation agreement; the agreement was before the matrimonial judge only by way of background evidence.
We therefore determine that election of remedies is not involved in this case, and Mrs. Huster was not estopped from subsequently seeking specific performance of the agreement. She did so with reasonable promptness. The judgment nisi in her husband's divorce suit was entered at the end of April 1960. On June 10 following, when the crossclaim *506 aspect of the foreclosure action was pretried, she sought and obtained leave to amend her crossclaim by adding a demand for specific performance under Article Third of the agreement relating to support, and a demand for an accounting with respect to payments not made under the provisions of Articles Second and Third, as earlier noted.

IV.
At the trial of the crossclaim Mrs. Huster did not seek support under the agreement for the period preceding the December 21, 1959 order in the divorce action relieving the husband from paying her any support. Indeed, she could not have made such a claim, for having sought and obtained relief in the Juvenile and Domestic Relations Court, she could not  even were the state of the law pre-Schlemm other than what it was  have enforced the support provisions of the separation agreement. Halstead v. Halstead, 74 N.J. Eq. 596, 599 (Ch. 1908).
Appellant contends that the trial judge, in dealing with Mrs. Huster's crossclaim, had no authority to adjudicate and enforce the support terms of the separation agreement after judgment for divorce on the ground of her adultery had been entered. Her unchastity, it is argued, precluded any recovery of the arrearages (ten months, beginning with January 1, 1960, when she was no longer obtaining support because of the matrimonial judge's action) or continued future support. Appellant cites Herr, op cit., § 489, p. 502, and Thomas v. Thomas, 104 N.J. Eq. 607 (E. & A. 1929). Herr states:
"The general rule is that the obligation of a husband to make periodic payments under a support agreement terminates when he secures a judgment of divorce from her, but this principle rests on the parties' presumed intention and is a matter of construction of the contract. In the absence of provisions contemplating liability beyond a divorce, ordinarily the obligation ceases upon the entry of a judgment of divorce at the suit of the husband. Thus where the husband obtained a judgment of divorce for adultery, it was held that liability under the agreement terminated upon the entry of the judgment of divorce [citing the Thomas case] * * *."
*507 Thomas was an affirmance on the opinion of former Vice Chancellor Buchanan. The parties there had entered into a separation agreement, dated July 21, 1922, whereby the husband agreed to pay the wife $250 a month and she agreed to accept that sum in full satisfaction of future support and maintenance. The agreement to support was bare of others terms, by way of condition or otherwise. For example, there was nothing to indicate the period of time support was to be paid  during the parties' joint lives, or regardless of whether they continued as man and wife, as here. The agreement is set out in the printed record before the Court of Errors and Appeals. Thomas v. Thomas, 1097 Court of Errors and Appeals (1928) (3d case), to be found in the State Library. The husband instituted an action for divorce in our former Court of Chancery on November 25, 1927, alleging that his wife had committed adultery with a named person during the last three months of 1924 and the first two of 1925. She denied the charge and, by way of counterclaim, sought specific performance of the separation agreement  specifically, all payments from and after August 1927, when the husband had stopped paying support. She thus sought a decree for past-due support instalments and those falling due in the future. The vice chancellor found adultery had been established. As to the counterclaim, he held the law of New Jersey to be that adultery by the wife is not legal justification for refusal by the husband to pay support to her under a separation agreement, "unless in such agreement the promise of payment is conditional upon the wife remaining chaste." Since the agreement contained no such provision, he held that the wife was entitled to the monthly instalments of support from August 1927 until the decree of divorce, which decree "will terminate liability for further payments under the agreement." (104 N.J. Eq., at page 609)
We are referred to no case which deals with a separation agreement embodying terms like the one under consideration. *508 In that agreement, executed in June 1954, more than three years before the adultery charged in appellant's divorce action, Huster agreed to pay his wife support and maintenance during their joint lives, "whether or not they continue to be husband and wife," so long as she did not remarry. He did not condition his payments of support and maintenance upon her remaining chaste. The clause, "whether or not they continue to be husband and wife" can only be read to mean that he would pay her support and maintenance even after divorce, and so long as she did not marry again. In our State divorce may be granted for desertion, extreme cruelty or adultery. Had appellant wanted to avoid paying support and maintenance in the event that Mrs. Huster should commit adultery, he could readily have provided for that eventuality in the agreement. As we have already observed, the agreement expressly recited that it had been entered into on the advice and under the supervision of counsel independently selected by each of the parties, who declared that the agreement was "in all respects fair, equitable, just and reasonable." The agreement concludes with this language:
"This agreement contains the entire understanding of the parties. There are no representations, warranties, premises [promises?], covenants or undertakings other than those expressly set forth herein."
The question here is one of construction of the separation agreement. We cannot supply language which the parties, bargaining at arm's length, did not adopt for themselves. A dum casta clause will not be implied as part of the agreement.
Appellant relies on Whittle v. Schlemm, 93 N.J.L. 78 (Sup. Ct. 1919), affirmed 94 N.J.L. 112, 8 A.L.R. 1447 (E. & A. 1920), to support his contention that the judgment of divorce for adultery cut off all of Mrs. Huster's rights to support under the separation agreement. Although *509 that case, as we shall see, involved only those support payments falling due before the decree nisi, a discussion of the case may be illuminating. The parties there had entered into an agreement dated January 22, 1915 which, as was then the common practice, appointed a third party as trustee for the wife. Mr. and Mrs. Schlemm agreed that it would be lawful to live separate and apart, and the husband agreed that he would pay $25 a week for the support of his wife and the child of the marriage, which sum she, in turn, agreed to accept in full satisfaction "for her support and maintenance and all alimony whatsoever," and also in full satisfaction for the support of the child. As in Thomas, that undertaking was unconditional, and there was no limitation as to the period during which payment would be continued. The agreement appears in 836 Court of Errors and Appeals (1920) (3d case), to be found in the State Library.
Plaintiff trustee sued in the district court to recover $25 a week from November 2, 1915 to March 1, 1916, under the separation agreement. The husband had stopped payment in October 1915, claiming his wife had committed adultery. Shortly thereafter he sued for divorce on the ground of adultery, alleged to have been committed on October 24, 1915, and obtained a decree nisi on May 1, 1916. Judgment went in favor of the trustee. On appeal the Supreme Court affirmed, noting that there was nothing in the agreement which in terms would avoid it if the wife failed to observe her marriage vows. It observed that "Whatever may be the effect of a lawful decree dissolving the marriage, that consideration is not present in this controversy, because the action relates entirely to payments maturing prior to that event, and the husband was lawfully bound to maintain his wife, at least until they were legally divorced." 93 N.J.L., at pages 79-80. The alleged adultery was held to be no defense to the action on the contract, and the institution of the divorce action was not a bar to enforcement of the agreement for support.
*510 The Court of Errors and Appeals affirmed. Chancellor Walker, writing for the court, criticized and in effect overruled Devine v. Devine, 89 N.J. Eq. 51 (Ch. 1918), where Vice Chancellor Leaming had supplied by implication a condition not in the contract which the wife was seeking to enforce, namely, that she would remain chaste. Chancellor Walker said:
"We are unable to concur in the reasoning of the learned Vice Chancellor, or to agree, that there is any different rule in New Jersey from that which obtains in England with reference to the right of the wife, while living separate and apart from her husband, to secure the funds provided for her support in a separation agreement even after the commission of an act of adultery by her, because, in our opinion, the husband's liability persists unless there is an express stipulation and limitation in the separation agreement that payment shall cease in the event of her becoming unchaste, for, without such provision, the common law obligation of a husband to support his wife continues  unless and until he procures a divorce from her. The question is one of construction of the agreement, and where husband and wife are living apart under separation articles, there is nothing in the situation which calls for the importation into their contract of a dum casta clause, as it is called; on the contrary, the situation, namely, the wife's dependence and the husband's liability for her support while she continues to be his wife, repels such a construction." (Italics ours) (94 N.J.L., at page 117)
And see Cohen v. Cohen, above, 121 N.J. Eq. 299 (Ch. 1936).
Cases like Whittle v. Schlemm and Cohen v. Cohen go no further than to hold that a wife's adultery, absent a dum casta clause, is no defense to an action for support under the agreement during the period of coverture. The Thomas case, above, 104 N.J. Eq. 607, was to the same effect, but also held that the wife's adultery would terminate the husband's obligation to continue support payments under the separation agreement after he obtained a divorce. However, the agreement in Thomas, as we have seen, was completely different from the present one. That the instant agreement was clearly intended by the parties to survive a divorce is specifically indicated in Article Third, which contains no *511 dum casta clause and does not limit the obligation to pay support to the period of coverture.
The question we deal with was left open in Schlemm v. Schlemm, above, 31 N.J., at page 583. That case held that a support agreement may survive a divorce decree obtained by the husband. However, the court observed that "the omission of any provision as to what would happen if the wife remarried or became unchaste is immaterial for there is no suggestion that that has occurred * * *; the omission of any express provision as to survival after divorce is immaterial in view of our conclusion, hereinbefore expressed, that the parties clearly contemplated such survival; * * *."
Appellant readily acknowledges the absence of a dum casta clause in the separation agreement, but then points out that adultery is a crime, N.J.S. 2A:88-1, and is interdicted by the Ten Commandments; likewise, fornication is a crime, N.J.S. 2A:110-1. He advances the public policy argument that an unchaste wife, subsequently divorced, should not have the benefit of her bargain under a support agreement antedating any act of unchastity. He argues there are social and moral factors involved in compelling a husband to continue to pay support under such circumstances. He contends that if a court may modify an agreement on such terms as justice requires, "even to the extent that the performance ordered is not identical with that promised in the agreement," as stated in Flicker v. Chenitz, 55 N.J. Super. 273, at pages 292-3, then it may also terminate support payments upon proof of unchastity. Such action, says appellant, would have a definite social value and be in harmony with sound public policy.
The argument has some appeal. However, we are dealing in an area of the law distinct from a matrimonial action where alimony incidental to divorce or statutory support is involved. In such a case we are faced with a balance of matrimonial rights and obligations arising out of disputes concerning acts offensive to the marital state, where a wrong *512 on the part of the wife may give rise to a right on the part of the husband, or cancel his obligation to support her. However, in the case of specific performance of a support and property rights agreement, the situation is quite different. At the time of the execution of the 1954 separation agreement, the parties had obviously found life together intolerable. In the absence of any acts entitling one or the other of them to seek relief in our courts with respect to the obligations arising out of their marital relation, they freely and with the advice of independent and able counsel, fixed their rights and obligations by contract. There was no fraud, as in Sabbarese v. Sabbarese, 104 N.J. Eq. 600 (Ch. 1929), affirmed o.b., 107 N.J. Eq. 184 (E. & A. 1930), where the wife committed adultery prior to the execution of the separation agreement and concealed that fact from her husband, who did not know of her infidelity. In short, the parties here replaced whatever rights law or equity would have afforded them, with the separation agreement in question.
Appellant at no time has asserted that the agreement is unfair, nor has he sought modification based upon changed circumstances, in which connection see Flicker v. Chenitz, above. With respect to changed circumstances, we observe that appellant's means were thoroughly explored at the trial of the crossclaim, and the Chancery Division judge found the support agreement fair and equitable.
As respondent observes, the question here is not whether Mrs. Huster's adultery was correct moral or social behavior; rather the point is whether that adultery has any logical bearing upon the interpretation of the contract. As we read the cases, our courts say that it does not unless it is bargained for. The next question would be whether the termination of the marital relationship at the suit of the husband, regardless of his grounds, terminates his obligation to pay support under the separation agreement. Schlemm holds that it does not, if the intention of the parties clearly is *513 that the agreement survives the dissolution of the marriage. The parties here specifically so provided in their agreement.
We therefore hold, in light of the provisions of the 1954 separation agreement and the circumstances of this case, that the trial judge correctly granted specific performance of the provisions of Article Third by requiring appellant to pay his former wife $150 a month for a period of ten months beginning in January 1960, and $150 a month thereafter, beginning November 1, 1960.

V.
We now deal with appellant's contention that it was error to require him to pay the 16-month arrearage in the carrying charges of the foreclosed matrimonial home  $2,560 at the rate of $160 a month  under Article Second of the separation agreement, quoted at the head of this opinion. Appellant had met the $160 payments through July 1958, when he discontinued them.
The property, as we have seen, was held by the entireties. Article First of the separation agreement provided that if the property was sold by mutual consent, or after a divorce, the net proceeds were to be divided equally. Under Article Second appellant was to pay the monthly instalments of principal and interest on the mortgage, taxes and fire insurance premiums, totalling about $160 a month, and these payments were to continue as long as the parties held the property as tenants by the entirety. The property was sold at the close of 1959. The decree nisi was entered April 28, 1960 and became final, after we affirmed on appeal, on January 9, 1961.
Mrs. Huster, by her amended crossclaim, sought an accounting with respect to payments not made under the provisions of Article Second. In effect, she sought an award for the loss of whatever interest she had in the foreclosed property. On this phase of the case, the trial judge concluded:
*514 "* * * I do not think the wife would be entitled to damages as such in a situation like this, but if she had a loss and she established what that loss was by reason of the husband's failure to perform the contract, she might be reimbursed therefor. But I do not have proofs before me that permit [me] to make a sound judgment as to her loss. If I were to make an estimate it would be purely speculative, but I can do something in lieu of that.
I will allow her the sum of $150 [$160 was obviously meant, as reflected in the judgment] a month for the period of sixteen months intervening between the time of the last of such payments and the execution sale of the property. * * *"
Appellant argues that he paid as long as he could, but finally, by reason of his straitened financial circumstances, was unable to pay the carrying charges of the property at the same time he was providing support for the wife and children. The record shows that his net earnings had for some years been relatively modest. After the separation he lived with his mother, who appears to be a person of means, and it was she who provided for the private school education of the three children of the marriage.
Appellant also argues that he cannot be held solely responsible for the loss of the home. He notes that he and Mrs. Huster both had an interest in the property, and that he lost whatever equity he had when the mortgagee foreclosed. He points out that his wife had received $1,000 from him in payment of arrears in August 1958, and another $1,957 in July 1959. She was receiving $65 weekly support money, and had $4,600-5,800 in her bank account in 1957, and $2,800-3,200 in 1958. Her annual income from farm properties in North Carolina amounted to about $3,500. Appellant contends that, whatever his obligation under the separation agreement, his wife could have protected her interest because she had the means to do so at a time when he was in financial difficulty.
From our reading of the record in this case, as well as our acquaintance with the record on appeal in Huster v. Huster, 64 N.J. Super. 29 (1960), we have a strong conviction that Mrs. Huster could readily have made an *515 effort to save the property from foreclosure out of her own funds and thereby protected her interest, which was at least as great as that of her husband. Having taken care of the emergency, she could then have sought reimbursement from him.
However, we need not decide the matter on that basis. The fact is that respondent did not, as the trial judge stated, establish just what her loss was by reason of her husband's failure to meet his obligation under Article Second of the separation agreement. We agree with the trial court that the proofs did not permit of a sound judgment as to her loss  one would have to speculate.
What the trial judge did was to resolve the matter by awarding Mrs. Huster the full $160 a month for the 16-month period indicated. He did not say he was modifying the separation agreement post hoc, but rather attempted to achieve a measure of rough justice, and this in face of a complete lack of proof as to the extent of Mrs. Huster's loss. Were the parties tenants in common, one might attempt to determine just how much each monthly mortgage payment reduced the face of the mortgage, thereby increasing the equity of the owners. But what we have here is a tenancy by the entirety. As long as the Husters remained married, the wife had nothing more than an inchoate right which would bloom into full ownership only if she survived her husband.
An award cannot be floated on a sea of speculation. It cannot be supported where no proof of loss exists. By awarding $2,560 to Mrs. Huster, the trial court was in effect making appellant pay her what he would have paid the mortgagee for principal and interest, the municipality for taxes, and the insurance company for fire premiums. However, the agreement was not that he pay her, but that he pay them.
We conclude that the trial court was in error in making its "in lieu" award.

*516 VI.
Appellant's final point is that it was improper to award Mrs. Huster a $300 counsel fee because her attorney had already been awarded $200 pendente lite in the divorce action and $300 at the time of the judgment nisi. Further, that no fee may be permitted except in a matrimonial action, and no allowance made as to nonmatrimonial issues joined with matrimonial issues. R.R. 4:55-7(a).
That counsel fees were allowed in the divorce action has nothing to do with the allowance for prosecuting the crossclaim. The separation agreement was not litigated in the divorce action; whatever fees were there allowed by the matrimonial judge related exclusively to services rendered Mrs. Huster in her unsuccessful attempt to preserve the marriage bond.
R.R. 4:93-2(a) defines "matrimonial actions" as including "all actions for the enforcement, modification or vacation of agreements for support and maintenance." The crossclaim was precisely that type of an action. Appellant's argument is disposed of by Schlemm v. Schlemm, above, 31 N.J., at page 584. That case involved a property settlement and support agreement. Issue was raised as to the allowance of a counsel fee to the attorney for the plaintiff wife. The court said:
"* * * We readily reject the defendant's contention that the matter was not a matrimonial one within the provisions of R.R. 4:55-7(a) and R.R. 4:93-2(a). * * *"
We consider the $300 fee allowed to be reasonable.
The Chancery Division judgment is affirmed as to the support payments and the allowance of a counsel fee, and reversed as to the $2,560 awarded under Article Second of the separation agreement. We will allow respondent's attorney a counsel fee of $200 on this appeal. No costs.