## PLUMMER *vs.* KEPPLER and SCANLAN.

1. On a bill for specific performance, the court will grant or refuse its aid, according to the justice of the case; it will never extend its aid to a suitor who has practiced a fraud, or procured the contract by a misrepresentation of a material fact.

2. An intentional misrepresentation of a fact materially affecting the value or use of the property, will deprive the party making it of all right to a remedy in equity.

3. The remedy by specific performance is discretionary; the question is not, what must the court do, but what, in view of all the circumstances of the case in judgment, should it do to further justice. When the contract has been fairly procured, and its enforcement will work no injustice or hardship, it is enforced almost as a matter of course; but if it has been procured by any sort of fraud or falsehood, or its enforcement will be attended with great hardship or manifest injustice, the court will refuse its aid.

On final hearing, on bill, answer, and proofs.

*Mr. F. W. Leonard,* for complainant.

*Mr. W. J. Magie,* for Mr. Keppler.

*Mr. Robert E. Chetwood,* for Mrs. Scanlan.

THE VICE-CHANCELLOR.

The complainant asks the specific performance of a contract, whereby he agreed to convey to Mr. Keppler a house and lot on Grier avenue, in Elizabeth City, at a valuation of $15,750, and the defendant, in payment of that sum, agreed to pay $750 in money, to assume the payment of a mortgage for $7500 on the property to be conveyed to him, and to convey to the complainant a house and lot on Anna street, in the same city, valued at $7500. The cash payment was made at the execution of the contract.

Among the defences set up, it is alleged the complainant procured the contract by fraudulent representations as to the cost of the house, which he had recently built, and as to the value of the lot whereon it stood. If these facts are established, the complainant's prayer must be denied. On a bill for specific performance, the court will grant or refuse its aid, according to the justice of the case; it will never extend its aid to a suitor who has practiced a fraud, or procured the contract by a misrepresentation of a material fact. *Miller* v. *Chetwood*, 1 *Green's Ch.* 208 ; 2 *Chitty's Con.* (11 *Am. ed.*) 1473.

An intentional misrepresentation of a fact, materially affecting the value or use of the property, will deprive the party making it of all right to a remedy in equity. *Wuesthoff* v. *Seymour*, 7 *C. E. Green* 69.

The remedy by specific performance is discretionary ; the question is not, what must the court do, but what, in view of all the circumstances of the case in judgment, should it do to further justice. When the contract has been fairly procured, and its enforcement will work no injustice or hardship, it is enforced almost as a matter of course ; but, if it has been procured by any sort of fraud or falsehood, or its enforcement will be attended with great hardship or manifest injustice, the court will refuse its aid. *Seymour* v. *Delancey*, 6 *Johns. Ch.* 222 ; *King* v. *Morford*, *Saxton* 281 ; *Rodman* v. *Zilley*, *Ib.* 324 ; *Conover* v. *Wardell*, 5 *C. E. Green* 273 ; *Story's Eq. Jur.*, §§ 750 a, 751.

In view of the evidence, there can be no doubt that, on the evening the contract was executed, and just before it was signed, the complainant represented to the defendant, that his house had cost from $10,000 to $11,000, besides the outlay for gas fixtures, summer pieces, inlaid doors, and the value of his services as architect, and that land adjacent to his lot had been sold, a few days before, for $100 a foot.  Five persons were present : the defendant and his wife ; the complainant; George L. Meyer, the broker negotiating the contract, and who has been called as a witness for the complainant ; and Mr. William H. Pooler, who had owned the lot on which the house was built, having conveyed it to the complainant with an understanding he should be paid for it, on its sale, with a house, at the rate of $70 a foot, and also that he should then be entitled to one-half of the profit made on the house. The defendant and his wife testify, clearly and positively, to the foregoing representations.  The complainant says, generally, he never represented to the defendant that the house had cost $11,000, but when required to repeat the conversation at the signing of the contract, says, the defendant and he had the usual conversation occurring between parties dealing, but declares he cannot give the particulars.  Mr. Meyer makes no allusion to the occurrences preceding or attending the signing of the contract.  While Mr. Pooler denies hearing any representations respecting the value of the property made by the complainant, he so far corroborates the defendant and his wife as to say that, just before the execution of the contract, Mr. Meyer stated to the defendant, with the complainant's knowledge, and without eliciting any sign of disapproval, that the lot was worth $100 a foot, and that the house must have cost from $10,000 to $12,000, as it was unusually well built.  These representations of cost and value correspond exactly with the sum fixed as the purchase money to be paid to the complainant: Lot, fifty feet front, $5000 ; house, $10,750 ; total, $15,750.  They embraced material facts.  That, pretending to state the cost of the house, rested exclusively in the knowledge of the complainant ; it was not

open to inspection or examination ; if he said anything, he was bound to speak the truth. It is obvious they influenced the action of the defendant. When the contract was produced at his residence, on the evening it was signed, the sum named as the purchase money was $15,500. Before it was signed, this sum was raised to $15,750. Something occurred there before the signing, which induced the defendant to consent to the increase.

Were these representations true? The complainant has not attempted to show their truth. No attempt has been made to show that any lands on Grier avenue were ever sold for $100 a foot. The complainant admits the contract price for building his house was $6666. The conviction is irresistible, that these representations were known to be untrue at the time they were uttered, and that they were made to entrap the defendant into a contract to take complainant's property at a valuation of one-fourth, or at least one-fifth, in excess of its fair value. A court whose delight it is to do justice, will not give its aid to a suitor whose title to relief rests upon an engagement procured by false words.

Let the bill be dismissed, with costs. I will so advise.