Complainant moves to strike the answer and counter-claim of the defendant, her husband, filed to her bill against him founded on a separation agreement.
The parties had separated before 1928 when they entered into the agreement. Thereby they each consented that they should continue to live separate and apart, and the husband agreed to pay to his wife $50 weekly, until her death or remarriage, in full satisfaction of all claims for maintenance and support. Defendant has so fallen behind in the promised payments, that the arrears now amount to $7,800. Complainant sues for the arrears.
The sufficiency of the case made by the bill must be considered *Page 176 
in the light of Aiosa v. Aiosa, 119 N.J. Eq. 385, a very similar suit. The bill was dismissed by our court of last resort, speaking through Mr. Justice Donges, who relied on Apfelbaum v.Apfelbaum, 111 N.J. Eq. 529, and Second National Bank v.Curie, 116 N.J. Eq. 101. The rule which I deduce from theApfelbaum Case and from Phillips v. Phillips, 119 N.J. Eq. 462,
may, perhaps, be stated in these terms: The Divorce act gives to chancery jurisdiction to award alimony and from time to time to increase or diminish it. Any contract between the parties attempting to fix alimony is contrary to the policy of the statute and void, and no action can be based thereon, although the contract is evidential of what is reasonable alimony under the circumstances existing at the time the contract was made. The bill in each of these two cases was dismissed. Second NationalBank v. Curie presented a very different situation. The parties were man and wife, resident in New York; no divorce suit was pending or contemplated. The only possible cause of action of the wife against her husband, cognizable in chancery, was the one stated in her counter-claim, founded on her contract. The court of errors and appeals, while reversing the decree, did not direct the counter-claim dismissed but remitted the cause to chancery for further proceedings, thereby establishing that the contract was valid and enforceable.
Aiosa v. Aiosa was a suit on a separation agreement. The complainant wife had no cause of action under the statute for alimony or for separate maintenance. She had no cause at all, unless it were on the agreement. Chancery decreed that her husband pay her the amount due. The upper court said: "In the instant case there was no attempt to show the reasonable needs of the wife or the ability of the husband. The decree was for a specific performance of the agreement and under the settled law of this state was not within the competence of the court and the bill should have been dismissed." The decision seems not to be supported by Apfelbaum v. Apfelbaum, for that case, as I understand it, was based on the fact that the wife had her remedy by suit under the statute, while Mrs. Aiosa had no remedy unless it were an action on the contract. Nor was Second National Bank
v. Curie a supporting *Page 177 
precedent, for there the record was remitted in order that a decree might be made on the contract, while the Aiosa bill was dismissed. I cannot but surmise that the learned court acted under a misapprehension in the Aiosa Case, perhaps because they did not have the benefit of argument, for the ground on which they acted was not suggested in the reasons for reversal or mentioned in the briefs. Did they not assume that the bill disclosed a statutory ground for alimony, although not praying for relief of that nature?
The subject of relief on a separation agreement is most carefully dealt with by Vice-Chancellor Berry in an opinion just filed in Cohen v. Cohen, 121 N.J. Eq. 299. I have nothing to add to his discussion and am convinced of the soundness of his conclusion that such an agreement, if fair and just, may be enforced in chancery to the extent of a money decree for accrued arrearages.
After the opinion in the Aiosa Case was published, complainant, by amendment, carefully erased a prayer for specific performance. The amendment, while harmless, was unnecessary. We cannot suppose that the action of the court of errors and appeals in any of the cases cited was based upon the presence in the bill of such a prayer. No magic inhabits the words "specific performance;" they confer neither blessing nor bane.
There are but two judicial remedies founded on contract, an action for specific performance (in which I include injunction) and an action for damages. Anson, Contr. 381. In the one, chancery orders the contractor to fulfill his promise, to the extent that is equitable; in the other, a law court awards damages for the breach of contract. In the Apfelbaum Case, the court of errors and appeals placed a suit for specific performance in antithesis to an application for alimony; the action on the contract was dismissed without prejudice to an action under the statute. I interpret the Phillips decision in the same way. When, in the Curie Case, Mr. Justice Parker said that the agreement "was subject to the control of the court of chancery but not by way of specific performance," he indicated, I believe, that chancery had a wider discretion in enforcement of that agreement than it has, for example, *Page 178 
in a suit on a contract to convey land. Hence Mr. Justice Parker's statement, "the only subject-matter of this appeal is whether the trust for the benefit of the wife for her life is a valid trust and whether it should be enforced strictly accordingto its terms."
With few exceptions, any action on contract, prosecuted in a court of equity, is properly termed a suit for specific performance, and the bill may aptly pray that the defendant be decreed to perform. And chancery has jurisdiction of every such suit even though established principles of equity may require the court to grant less than full performance, or may forbid any relief at all.
Mr. Moller's contract to pay a certain sum weekly to his wife from whom he was living apart, belongs to a class of contracts which this court enforces in respect to accrued arrearages. The defendant admits that it was fair and equitable when made. But he says that by reason of changes in his financial circumstances, the agreement has become onerous and unfair, and performance impossible. He wants the court to determine what, in the absence of agreement, would have been a fair sum for him to have paid in the past few years, and to render judgment, based on such sum, rather than on the agreed sum.
Remember that the wife's only right to relief is founded on the contract. She has no title to statutory maintenance. If the husband's income had doubled since the agreement was made, she could still only demand what he had promised. Under the rule for which defendant argues, the contract would bind only the wife and not the husband. So it is not surprising to find it uniformly held that hardship or inability to perform due to a change in the husband's financial circumstances is not a defense. Vandegrift
v. Vandegrift, 63 N.J. Eq. 124; Stern v. Stern, 112 N.J. Eq. 8; Corrigan v. Corrigan, 115 N.J. Eq. 49; Phillips v.Phillips, 118 N.J. Eq. 189. See, also, Dennison v. Dennison,98 N.J. Eq. 230, 238; 99 N.J. Eq. 883, where Vice-Chancellor Berry said that "the equities to be considered in determining the fairness or unfairness of such a contract are the equities as applied to the wife." *Page 179 
The next defense is this: The agreement specified that complainant's dower right should in no way be affected by it. But she promised, upon demand and payment to her of her dower interest in any particular parcel of land, to execute and deliver any deed or other instrument which might be necessary to bar her dower in order that her husband might sell or mortgage his property. It appears — accepting defendant's affidavit as true — that in July, 1933, when he was in arrears for $1,050, he applied to Mrs. Moller's solicitor to have her join in a mortgage upon his property, the proceeds of which, he stated to the solicitor, would be used for payment of the arrearages. The solicitor replied by letter that his client was not interested in executing a mortgage at that time.
Mrs. Moller's agreement to release dower was conditioned on payment to her of her dower interest. The answer does not allege payment or tender of her dower interest and therefore does not show a breach, or disclose a defense to the suit. But even if the answer were sufficient in this respect it would not constitute a defense unless Mrs. Moller's agreement to release dower and Mr. Moller's agreement to pay her $50 a week, were mutually dependent. If the covenants are independent, the breach of one is no defense to an action on the other. "In construing contracts, the essential question is to ascertain the intention of the parties. This rule, therefore, necessarily applies in ascertaining whether a contract is divisible or entire. * * * If there be a single assent to a whole transaction involving several things or several kinds of property, a contract is always entire; but if there be a separate assent to each of the several things involved, it is divisible. * * * A contract is entire when the promise of the one party is conditional on entire performance of the contract by the other party, and severable when the consideration to be performed by one party consists of several distinct and separate items respecting which the consideration is apportioned to each item, or is left to be implied by law."Dixon v. Smyth Sales Corp., 110 N.J. Law 459. This rule has been frequently applied to separation agreements and the husband's promise to pay an allowance to his wife has been *Page 180 
held to be independent of her covenant respecting the husband's access to their children or her covenant not to molest him or bring suit against him, or to contract debts on his credit.Aspinwall v. Aspinwall, 49 N.J. Eq. 302; Sabbarese v.Sabbarese, 104 N.J. Eq. 600; Thomas v. Thomas, Ibid. 607;Stern v. Stern, supra. In the last case, Vice-Chancellor Backes said: "Breaches by the wife of her covenants do not relieve the husband from performance. They are independent covenants, independent of the allowance promised during separation in lieu of the husband's legal obligation to support his wife and children."
In the case at hand the husband's obligation for weekly payments to the wife that fell due before he demanded the release of dower, cannot be dependent on her giving the release. His contention that his promise, so far as relates to current or subsequent payments, was conditional upon her executing the release, is contrary to the authorities above cited. A separate consideration was stipulated for the dower, namely, the payment of its value. The answer discloses no defense and will be struck.
The defendant counter-claims for relief of two kinds based upon the facts already stated. First he asks damages for his wife's breach of contract, in refusing to join in the mortgage. Ordinarily, chancery has no jurisdiction of a damage suit for breach of contract, but here the parties are husband and wife so defendant cannot sue in a court of law. In order that he may not be without remedy, chancery will entertain his action. Drum v.Drum, 69 N.J. Law 557; Fike v. Fike, 3 N.J. Mis. R. 485;128 Atl. Rep. 849; 99 N.J. Eq. 424. This part of the counter-claim may stand.
The defendant also prays "that said agreement may be reformed because of the change of conditions entirely without the contemplation of the parties at the time of making thereof, so that it has become inequitable and unfair, and that its terms may be adjusted in accordance with the present conditions according to equity and good conscience."
In support of this prayer, the husband alleges not only that his income has greatly diminished and his property dwindled away, but also that when the contract was made, the parties *Page 181 
contemplated that the defendant's income would continue substantially unimpaired and that they did not anticipate such a change of conditions as has since taken place. A change in financial conditions not anticipated by the parties is not a ground for reforming a contract, else many leases and other contracts would have been reformed by the courts in the last few years. Mr. Moller asks the court to make a contract between him and his wife. "If a contract is the product of fraud, mistake, coercion or the like, a court of equity may annul it. If, through mistake, it does not state the real agreement, the court may reform it. But the court cannot make a contract for the parties or revise their agreement. Contracts arise only from the voluntary acts of the parties." Phillips v. Phillips, 118 N.J. Eq. 189.
"It is entirely beyond the power of any judicial tribunal to make a contract for litigants or compel them to make a contract with each other. The principle which must govern the decision of this case is free from all doubt. No court has power to make a contract for persons sui juris." Domestic Tel. andTel. Co. v. Metropolitan Tel. and Tel. Co., 39 N.J. Eq. 160;40 N.J. Eq. 287. "It is elementary that the law is powerless to supply or add to a contract, unless the parties have invited such assistance or addition by omission to expressly define their obligations. * * * And this restraint is likewise imposed on courts of equitable jurisdiction. The field of equity jurisprudence is not like unto an unchartered sea with no compass to guide save the conscience of the chancellor, unrestrained by principle, precept or rule. * * * Neither a court of equity nor of law can vary men's wills or agreements or [in other words] make wills or agreements for them. Both are to understand them truly and therefore uniformly. One court ought not to extend nor the other abridge, a lawful provision deliberately settled by the parties, contrary to its just intent. Both courts will equitably construe, but neither pretends to control or change, a lawful stipulation or engagement." Goerke Kirch Co. v. Goerke KirchHolding Co., 118 N.J. Eq. 1. The prayer for reformation in the counter-claim will be struck, and so many of the allegations as only bear on that prayer and not the prayer for damages. *Page 182