116 N.J. Super. 546 (1971)
283 A.2d 131
NORMAN N. SCHIFF, PLAINTIFF-RESPONDENT,
v.
CLAIRE SCHIFF, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1971.
Decided October 28, 1971.
*550 Before Judges KILKENNY, LABRECQUE and LANE.
Mr. Joseph Schoenholz argued the cause for appellant.
*551 Mr. Irving N. Yankowitz argued the cause for respondent (Messrs. Yankowitz & Tessler, Attorneys; Mr. Yankowitz, of counsel; Mr. Norman N. Schiff, of counsel and on the brief).
The opinion of the court was delivered by LANE, J.A.D.
Upon leave granted defendant appeals from three interlocutory orders: (1) an order dated March 18, 1971 denying her application for an order compelling plaintiff to restore support payments called for under a written agreement which he had arbitrarily reduced and to compel plaintiff to pay certain medical bills; (2) an order dated April 1, 1971 denying defendant's motion for summary judgment under the written agreement for payments in excess of the basic amount provided for which payments were to be made when plaintiff's "calendar year gross income" was in excess of certain figures, and (3) an order dated April 19, 1971 denying a motion of defendant for judgment for arrears in payments called for under the separation agreement which had accrued between January 8, 1971 and April 8, 1971.
A detailed statement of the facts is necessary for an understanding of the issues. The parties were married August 3, 1952. There is one child who is 11 years old at the present time. An agreement was executed between the parties on February 9, 1965 into which was incorporated a supplemental written agreement executed a short time thereafter.
The February 9, 1965 agreement was executed "to settle their property rights, and to agree upon provisions for custody of the child, and for the support, care, maintenance and education of said child and for the separate support of the wife." Under the agreement the plaintiff was to pay $190 a week for the support of the wife and $35 a week support for the child. Provision was made for additional support:
* * * the husband agrees, if his earnings substantially increase in the future, and while his obligation to support the wife still persists, *552 that if his calendar year gross income, as evidenced by his income tax returns, shall be in excess of $50,000.00 and under $100,000.00 a year, he will pay her additional periodic support as follows:

 a. Between $50,000.00 and under
 $60,000.00 gross income $1,000.00
 b. Between $60,000.00 and under
 $70,000.00 gross income 2,000.00
 c. Between $70,000.00 and under
 $80,000.00 gross income 3,000.00
 d. Between $80,000.00 and under
 $90,000.00 gross income 4,000.00
 e. Between $90,000.00 and under
 $100,000.00 gross income 5,000.00

Other relevant portions of the agreement were:
5. These support payments shall be due and payable by husband to wife but shall cease to be an obligation of husband (1) should the wife, in the event of a divorce between the parties, remarry; (2) should the husband die; or (3) should the wife die; whichever of the foregoing events first occurs.

* * * * * * * *
24. The parties respectively acknowledge that each has had independent legal advice by counsel of his or her own selection; that each fully understands the facts and has been fully informed as to his or her legal rights and obligations; and that having had such advice, and with such knowledge, each of them is signing the agreement freely and voluntarily.
Under the supplemental agreement plaintiff agreed to pay the federal and state income taxes for each year for the wife; the annual cost of Blue Cross-Blue Shield and major medical insurance coverage for her; gas, oil and general maintenance on any automobile owned by her, excluding major repairs; annual liability and collision insurance coverage on any motor vehicle owned by her; any annual water bills at 63 Vassar Avenue, Newark, as long as she lived there; and the amount of any mortgage payment exceeding $2,424 a year.
Following the execution of the agreement, defendant instituted suit in the Second Judicial Court of the State of Nevada which resulted in a decree of absolute divorce on *553 September 9, 1965. The decree ratified, approved and adopted the agreement.
Plaintiff has remarried.
On September 8, 1970 plaintiff filed a verified complaint alleging the marital history and claiming he had sustained a heart attack in July 1968 and that as a result of his present condition and "other untoward circumstances" he had been required to reduce his work activity (attorney at law) and "has therefore presently sustained a consequential loss of income." The first count of the complaint sought a judgment reducing plaintiff's obligations under the agreements. The second count sought a declaration of the meaning of paragraph 4 of the agreement, the escalation clause.
On February 5, 1971 defendant filed an answer and counterclaim. The delay in filing the answer and counterclaim was apparently caused first by her attorney waiting to be supplied with a copy of plaintiff's 1963 income tax return upon which the agreement was allegedly based, and upon the further fact that defendant suffered a serious accident as a result of which for a period of time she could not have any visitors.
The first count of the counterclaim alleged a default under the agreement in the amount of $1,683.05 for various miscellaneous items. The second count sought $1,655 for schooling for the child. The third count sought increased support alleging that at the time of the agreement defendant did not know plaintiff's true income and that living costs had increased because of the increased age of the child. The fourth count sought a judgment for $15,000 which defendant claimed she was entitled to under the escalation clause of the agreement. The fifth count sought an order to compel plaintiff to implement by testamentary disposition an oral agreement between the parties that should both parties die while the child was a minor, defendant's sister would be given custody and appointed guardian. The sixth count prayed for an order compelling plaintiff to establish *554 an educational fund for the child. The seventh count sought an order compelling plaintiff to post security.
There was submitted with the counterclaim defendant's affidavit showing that on January 8, 1971 plaintiff had suddenly and without warning reduced the $225 primary support figure to $112.50. The affidavit further showed that in 1969 plaintiff's income was $99,889; and in 1968, $80,621. It was alleged that on May 23, 1969 plaintiff purchased a home in Mendham for $108,000 which he sold May 25, 1970 for $123,000. It was further alleged that on May 25, 1970 he purchased a home in South Orange for $97,500. Defendant said that she was in dire need of the amounts that had been withheld. She further set forth certain medical bills resulting from her accident for which she sought recovery. Based upon the affidavit defendant obtained an order dated February 5, 1971 directing plaintiff to show cause "why he should not forthwith restore to the defendant the $112.50 a week denied her for the past four and possibly five weeks, and why he should not be required forthwith to pay the medical bills of defendant."
On the return of the order to show cause there was also before the court an affidavit by the plaintiff. This affidavit dwelt upon the fact that defendant had not listed in her affidavit her costs, assets, cash income, etc. Plaintiff further averred that he and his accountant had projected his income for 1971 at $26,850. He dwelt upon his heart condition. Schedules were attached showing his assets as of December 31, 1970 and his assets as of December 31, 1964. He admitted receiving the following total income and set forth the capital gains portion of that income as follows:

 Total Income Capital Gains
1965 $ 56,861 None
1966 61,872 $ 7,171
1967 72,822 26,152
1968 81,001 29,028
1969 100,019 66.641
1970 (projected) 81,557 42,060

*555 A copy of plaintiff's 1970 income tax return has been submitted which shows an adjusted gross income of $61,353, of which $29,109 is from the practice of law. Net long-term capital gains were $44,950, of which only 50% is included in the $61,353 figure.
In his affidavit he listed expenses at approximately $24,000 including such items as:

 Travel and entertainment $1,000
 Medical and drugs 1,500
 Domestic help 2,000
 Clothing 3,000

Defendant submitted a reply affidavit in which she pointed out that the projected 1971 earnings respesented whatever figure plaintiff chose to tell his accountant. She further pointed out that it was highly unlikely that plaintiff's heart condition would hamper him to any appreciable extent. She related his history from 1953 when he first started taking medication for his heart. He had an attack in 1961 and although advised to cut down on his activities, in fact he did not. In 1968 he had a heart attack but his earnings that year and the following year increased.
The hearing on the order to show cause was held March 3, 1971. By letter dated March 5, 1971 the trial court stated: "On what is before me and on the argument of counsel, I will vacate the Order to Show Cause without any action by the Court on either request. I assume that the plaintiff will pay $112.50 per week until he has exhausted his free assets and cash." As stated above, the order was signed March 18, 1971. On March 23, 1971 defendant served and filed a notice of intention to move for leave to appeal.
Defendant then moved for summary judgment on the fourth count of the counterclaim, supporting her motion with an affidavit showing that for the years 1965 through 1969 payments would be due to her under the escalation clause in the amount of $15,000. Her position was based upon the inclusion of capital gains in plaintiff's earnings. Plaintiff *556 filed a short answering affidavit stating only that it was never the intention of the parties during the negotiations to include capital gains within the escalation clause. At the conclusion of the hearing on March 26, 1971 the court merely said, "I will deny the notice of motion for the entry of summary judgment, * * *." An order was signed April 1, 1971. On April 5, 1971 defendant gave notice of intention to move for leave to appeal.
Defendant then moved "for the entry of judgment in favor of defendant and against plaintiff for arrearages in payments under the separation agreement between the parties beginning January 8, 1971 * * *." This motion was supported by an affidavit showing the reduction from January 8, 1971 of $112.50 a week and claiming that as of the date of the affidavit, March 31, 1971, there was $1,350 due. There was attached to this affidavit a list of her annual living expenses. She pointed out that defendant's contentions that his law practice had been substantially affected by an indictment pending against him was hardly credible in view of the fact that the indictment was handed down in December of 1969 and his earnings in 1970 were projected at $81,557.
This motion was heard by the court on April 8, 1971. At that time the trial judge set forth findings of fact and conclusions of law on the two prior matters. As to the order to show cause he stated:
There has been a dramatic reduction in income, and it is clear that the plaintiff has been producing assets to support both his present family and the defendant and his daughter. The delay by defendant in filing an answer for over four months and the financial plight of the plaintiff justifies a reduction of support, since this is a significant change of circumstances. See Martindell v. Martindell, 21 N.J. 341 (1956), also, Raymond v. Raymond, 39 [N.J.] Super. 24 (Ch. Div. 1956).
As to the motion for summary judgment he stated:
Plaintiff does not contend that he is no longer obligated to support defendant nor that the agreement between the parties was not just and equitable and voluntarily entered into in February of 1965.
*557 Defendant is seeking summary judgment on Paragraph 4 and contends that: 1. A change in the husband's present ability to pay has no bearing on his motion, and: 2. That the agreement requires capital gain income to be part of plaintiff's earnings.
As to the first argument, see Flicker v. Chenitz, 55 N.J. Super. 273, 292 (1960); Welser v. Welser, 54 N.J. Super. 555, at Pages 564 and 565; Schlemm v. Schlemm, 31 N.J. Super. [N.J.] 557, at 581 (1960).
As to the second point raised above, the agreement did not define the word "earnings". There is a question that the parties intended capital gains to be included in gross income. A question of fact also arises as to the meaning of the phrase, "If his earnings substantially increase in the future." If I follow defendant's argument, that is, that earnings and gross income are the same, the phrase would be surplusage. The parties disagree as to whether or not, as a matter of fact, they intended at the time of the making of the agreement to include capital gain income as earnings.
The defendant's attorney in his letter of March 26, 1971, addressed to the Court stated that the Court denied his request on summary judgment for a $3000 arrearage, allegedly accrued if the agreement is interpreted in plaintiff's favor, but the affidavit of the plaintiff dated February 25, 1971, denies any arrearages due the defendant. There must be a trial on all of these matters.
The trial court on April 8, 1971 denied the motion for a judgment for the arrears with no reasons. The order denying that motion was signed April 19, 1971. On April 19, 1971 defendant gave notice of intention to move for leave to appeal.
By letter dated April 26, 1971 the trial judge wrote to the attorneys:
The notice of motion returnable April 8, 1971 seeks judgment on arrearages based on the plaintiff's failure to pay $225 per week since January 8, 1971 in accordance with an agreement dated February 9, 1965 in New Jersey.
The trial court has the discretion to modify the agreement upon a showing of changed circumstances. See: Equitable Life Assurance Society of U.S. v. Huster, 75 N.J. Super. 492 (App. Div. 1962) and Flicker v. Chenitz, 55 N.J. Super. 273 (App. Div. 1959). Plaintiff alleges in his complaint a change of circumstances which may affect his ability to satisfy the agreement.
Therefore, defendant's request for relief must await trial.
Basically, defendant argues that the trial court erred because it treated the written agreement as though it were *558 an order of the court for alimony and support. She further argues that in fact the trial court granted pendente lite relief to the plaintiff reducing the payments called for, but no sufficient showing had been made by plaintiff to entitle him to such relief. She also argues that the escalation clause was perfectly clear and plaintiff raised no bona fide dispute as to a material fact concerning the meaning of that clause.

I
Agreements between husband and wife executed voluntarily and understandingly for the purpose of settling the issue of support are specifically enforceable to the extent that they are just and equitable. Schlemm v. Schlemm, 31 N.J. 557, 581-582 (1960). In Equitable Life Assur. Soc. of United States v. Huster, 75 N.J. Super. 492, 503-504 (App. Div. 1962), we recounted the changing policy of our courts on this issue. We need not repeat what we said there.
Plaintiff argues that his heart condition and the indictment against him with subsequent loss of business resulted in such a change of circumstances as to compel a modification of the agreement and to provide a sufficient defense against the relief sought in the order to show cause. However, he admits that his heart condition existed before the agreement was executed. In addition, there is no claim that the agreement is unfair or inequitable. Both parties apparently entered into it willingly and knowingly, fully cognizant of its terms and conditions.
The agreement provided for certain future changes of conditions: if the wife should remarry; if the husband should die; if the wife should die; if the husband's income should increase. Under such conditions the obligations are to cease or increase. Clearly if they had wished to, they could have provided for the conditions plaintiff now argues as justification for a modification.
Earlier decisions in New Jersey have held that financial inability is no defense to a wife's suit for specific performance *559 of a support agreement. Stern v. Stern, 112 N.J. Eq. 8, 10 (Ch. 1932), aff'd o.b. 113 N.J. Eq. 185 (E. & A. 1933); Moller v. Moller, 121 N.J. Eq. 175, 178 (Ch. 1936); Corrigan v. Corrigan, 115 N.J. Eq. 49, 51 (Ch. 1933); Vandergrift v. Vandergrift, 63 N.J. Eq. 124, 125 (Ch. 1902).
Dicta in some of the recent New Jersey decisions indicates that a showing of a change of circumstances is a sufficient defense to a suit for specific performance and will justify the court modifying the agreement. Berkowitz v. Berkowitz, 55 N.J. 564 (1970); Equitable Life Assur. Soc. of United States v. Huster, supra, 75 N.J. Super. at 512.
In Berkowitz v. Berkowitz, supra, the Court stated:
Agreements between separated spouses executed voluntarily and understandingly for the purpose of settling the issue of support for the wife and children are specifically enforceable, but only to the extent that they are just and equitable. Schlemm v. Schlemm, 31 N.J. 557 (1960) (support of wife); Equitable Life Assur. Soc. of United States v. Huster, 75 N.J. Super. 492 (App. Div. 1962) (support of wife and children). Therefore, the trial court has the discretion to modify the agreement upon a showing of changed circumstances. Flicker v. Chenitz, 55 N.J. Super. 273, 292 (App. Div. 1959), certif. granted, 30 N.J. 152, appeal dismissed by consent, 30 N.J. 566 (1959). Modification is similarly proper when the separation agreement is incorporated in the judgment nisi. Schluter v. Schluter, 23 N.J. Super. 409 (App. Div. 1952). However, when the parties and their attorneys have bargained at arm's length and there is no showing of unfairness, the trial court should not supply terms which the parties obviously considered and yet did not adopt. [55 N.J. at 569]
In referring to the power of the court to modify an agreement "upon a showing of changed circumstances," it is unlikely that the court meant to reduce the continued binding effect of a fair and just agreement between husband and wife to that of an order for statutory alimony.
Defendant argues that the trial court was in error in applying the law relating to statutory alimony, whereas the court should have applied the law of specific performance of contracts. In Schlemm v. Schlemm, supra, 31 N.J. at 580, the court indicated that while a court of equity can *560 specifically enforce a husband and wife support agreement, it can exercise "continued supervisory control." It is not clear, however, whether the court's "supervisory control" is governed by the rules of specific performance of contracts or by the rules pertaining to the court's statutory jurisdiction over alimony. It is apparent that Schlemm v. Schlemm, supra, revived the earlier cases holding that courts of equity could specifically enforce a husband and wife support agreement. Those cases indicate that while the specific performance was conditional, the enforcement should be governed by the law of specific performance relating to contracts. E.g., Buttlar v. Buttlar, 57 N.J. Eq. 645, 655 (E. & A. 1898). See Annotation, "Specific performance, or other equitable enforcement, of agreement for wife's support or alimony." 154 A.L.R. 323 (1945), with treatment of New Jersey cases at 338.
The remedy of specific performance is discretionary, resting in equitable principles. The party asking the aid of the court must stand in conscientious relation to his adversary. His conduct in the matter must have been fair, just and equitable, not sharp or aiming at unfair advantage. The relief must not be harsh or oppressive. His claim must be equitable. Stehr v. Sawyer, 40 N.J. 352, 357 (1963). The remedy of specific performance is not an absolute one. It is in large measure discretionary, resting on equitable principles to be applied upon a consideration of all the circumstances of the particular case. A judgment granting specific performance need not be unqualified in form. In the exercise of sound judicial discretion it may be granted upon such terms and conditions as justice requires, even to the extent that the performance ordered is not identical with that promised in the agreement. Deptford Tp. v. Woodbury Ter. Sewerage Corp., 54 N.J. 418, 434 (1969); Flicker v. Chenitz, 55 N.J. Super. 273, 292-293 (App. Div. 1959). See 11 Williston, Contracts (3d ed. 1968), § 1425 at 824.
When a contract has been fairly procured and its enforcement will work no injustice or hardship, it is enforced *561 almost as a matter of right. If it has been procured by fraud or falsehood, or its enforcement will be attended with great hardship or manifest injustice, the court will refuse its aid. Al-Sco Realty Co., Inc. v. Suburban Apt. Corp., 138 N.J. Eq. 497, 503 (Ch. 1946), aff'd 141 N.J. Eq. 40 (E. & A. 1947); Plummer v. Keppler, 26 N.J. Eq. 481, 482 (Ch. 1875). A court of equity will not order specific performance of a contract where from a change of circumstances or otherwise it would be unconscionable to enforce it. Johnson v. Hubbell, 10 N.J. Eq. 332, 342 (Ch. 1854). Subsequent events which should have been in contemplation of the parties as possible contingencies when they entered into the contract will not excuse performance. Newark v. North Jersey Dist. Water Supply Comm'n, 106 N.J. Super. 88, 105 (Ch. Div. 1968), aff'd o.b. 54 N.J. 258 (1969).
See 4 Pomeroy's Equity Jurisprudence (5th ed. 1941), §§ 1400-1410 at 1032; Pomeroy's Specific Performance of Contracts (3d ed. 1926); 5A Corbin, Contracts (1964), § 1162 at 205; Id., § 1164 at 219; Annotation, "Specific performance of a contract as a matter of right," 65 A.L.R. 7 (1930).
The showing of "changed circumstances," Berkowitz v. Berkowitz, supra, 55 N.J. at 569, to warrant the court in modifying an agreement between husband and wife must be such as to convince the court that to enforce the agreement would be unconscionable, the same standard that is applied by courts of equity to the specific enforcement of contracts in other fields. A far greater showing of changed circumstances must be made before the court can modify a separation agreement than need be shown to warrant the court amending an order for alimony or support.
In deciding defendant's order to show cause, the trial court ruled that as a result of defendant's delay in filing an answer and as a result of the "financial plight" of the plaintiff, a reduction of support was justified, since there was a significant change of circumstances. He relied on *562 Martindell v. Martindell, 21 N.J. 341 (1956), and Raymond v. Raymond, 39 N.J. Super. 24 (Ch. Div. 1956). His reliance was in error. Martindell v. Martindell, deals with the court's statutory jurisdiction to increase alimony under N.J.S.A. 2A:34-23. The present case deals with the court's inherent equity jurisdiction to specifically enforce or modify a husband and wife support agreement.
Raymond v. Raymond, supra, deals with a support agreement incorporated into a judgment nisi. The court, relying on Apfelbaum v. Apfelbaum, 111 N.J. Eq. 529 (E. & A. 1932), followed the rule that support agreements will not be specifically enforced if to do so would impair the unlimited statutory jurisdiction and obligation of the court to control the amount of alimony or support. Apfelbaum v. Apfelbaum was overruled by Schlemm v. Schlemm, supra, 31 N.J. at 581.
The trial court erred in determining the order to show cause based on law applicable to statutory alimony.

II
In effect, the action of the trial court in denying the relief sought by the order to show cause was to grant plaintiff a pendente lite reduction of the amount he was compelled to pay under the agreement between the parties. It should be considered in the light of the rules of law governing pendente lite applications.
Allowance of pendente lite relief has been considered as coming under the inherent jurisdiction of the court arising out of necessity. Affidavits in support of applications for pendente lite relief must make out a prima facie case. Wheeler v. Wheeler, 48 N.J. Super. 184, 192 (App. Div. 1957). The court looks into the merits of the application as disclosed by the pleadings and affidavits and is thereby guided in the exercise of its discretion. When the bona fides of an application is questionable, preliminary relief will be denied. Suydam v. Suydam, 79 N.J. Eq. 144 (Ch. 1911).
*563 The trial court ruled that the the reduction was justified because of plaintiff's changed circumstances. The party who seeks modification of an order for alimony or support has the burden of establishing that changed circumstances call for the relief. Boorstein v. Boorstein, 142 N.J. Eq. 135, 136 (E. & A. 1948); Martindell v. Martindell, 21 N.J. 341, 353 (1956); Storch v. Storch, 7 N.J. Super. 97, 99 (App. Div. 1950).
The court found that plaintiff's proofs showed that the changed circumstances he alleged might affect his ability to satisfy the agreement. Such proof is certainly not enough to support an application for pendente lite relief even in the case of an application to modify an order for support or alimony.

III
Both the order to show cause and the motion for judgment for the amount of the arrearages sought relief as to accrued payments under the agreement.
The trial court based its denial of defendant's motion for arrearages on its power to modify the agreement upon a showing of changed circumstances. Since plaintiff alleged that his changed circumstances might affect his ability to satisfy the agreement, the motion was denied.
Regardless of whether plaintiff could during a plenary hearing show such changed circumstances as to require a modification for the future because enforcement of the agreement would be unconscionable, he has made no such showing in his affidavits. The parties have fixed their rights and obligations by contract. Equitable Life Assur. Soc. of United States v. Huster, supra, 75 N.J. Super. at 512. Plaintiff does not deny that the contract was fair and just.
The court should not have denied defendant's application for arrearages due as a result of plaintiff's self-imposed reduction on the basis of the proofs before him. See Schlemm v. Schlemm, supra, 31 N.J. 557, Aspinwall v. Aspinwall, 49 N.J. Eq. 302 (E. & A. 1892); Cohen v. Cohen, 121 *564 N.J. Eq. 299 (Ch. 1936); Moller v. Moller, 121 N.J. Eq. 175 (Ch. 1936); Corrigan v. Corrigan, 115 N.J. Eq. 49 (Ch. 1933); Dennison v. Dennison, 98 N.J. Eq. 230 (Ch. 1925), aff'd 99 N.J. Eq. 883 (E. & A. 1926); Halstead v. Halstead, 74 N.J. Eq. 596 (Ch. 1908); Buttlar v. Buttlar, 71 N.J. Eq. 671 (Ch. 1906); Vandegrift v. Vandegrift, 63 N.J. Eq. 124 (Ch. 1902); Mockridge v. Mockridge, 62 N.J. Eq. 570 (Ch. 1901).
Accrued payments due under the agreement are vested. Genola v. Scharer, 79 N.J. Super. 308 (App. Div. 1963). There is no authority for the court to deprive defendant of her accrued rights under the agreement.
Defendant is entitled to an order compelling plaintiff to pay the arrears caused by the arbitrary reduction of the weekly payments from $225 to $112.50 and compelling him to continue the $225 weekly payments pending the final hearing. At the final hearing the court will be guided by the principles set forth in this opinion. The request for payment of medical bills contained in the order to show cause was properly denied. The decision on this issue depends upon an interpretation of the agreement in the light of all the circumstances including the interpretation placed upon the applicable provision of the agreement by the parties as shown by their conduct.

IV
We are left with the denial by the trial court of defendant's motion for summary judgment on the fourth count of the counterclaim. In denying that motion the trial court said that there was a question whether the parties intended capital gains to be included in gross income and a question of fact as to the meaning of the phrase, "if his earnings substantially increase in the future." We are unable to see any question of fact in the interpretation of the escalation clause.
The purpose of the agreement was to provide for support for the wife and child. There is no indication that *565 that support was to come only from plaintiff's income from his law practice. It would be ridiculous for plaintiff to argue that he could not fulfill the weekly support requirements if his income from his practice fell to less than $11,700 ($225 x 52 weeks). The escalation clause can only mean exactly what it says, i.e., if plaintiff's calendar year gross income as shown on his income tax returns is in excess of $50,000 a year, defendant is entitled to the additional payments set forth.
Plaintiff's only defense to the motion for summary judgment was his bald conclusion that "there was no intention during negotiation of the agreement to consider capital gains nor did I sign any agreement with that understanding." Plaintiff may have had an undisclosed intention not to include capital gains, but such undisclosed intention is irrelevant. Courts are not at liberty to consider and effectuate any unrevealed, supposed intention. An unrevealed intention is ineffective. The question is the intent expressed or apparent in the writing. Newark Publishers' Ass'n v. Newark Typographical Union, 22 N.J. 419, 427 (1956); Corn Exchange, etc., Phila., v. Taubel, 113 N.J.L. 605, 609 (E. & A. 1934). Parties are bound by the language used regardless of their actual intent except where the intention may, in accordance with established equitable principles, afford the basis for a reformation of the writing. The escalation clause included all of plaintiff's income whether that income was from the practice of law, investments or otherwise. There is no support for any other construction of the clause.
From the papers before the court there was no genuine issue as to any material fact. Defendant was entitled to a summary judgment as sought in her motion in the amounts set forth in paragraph 2 of her supporting affidavit. See, Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 75 (1954); Sokolay v. Edlin, 65 N.J. Super. 112, 121 (App. Div. 1961); R. 4:46-2. Upon remand partial summary judgment will be entered in the amount of $17,550 representing *566 the amounts due under the escalation clause with interest figured to October 15, 1971.

V
The three orders appealed from are reversed except as to the medical bills. Judgment will be entered by the Chancery Division fixing plaintiff's current arrears of the basic $225 a week payment and ordering plaintiff to pay such arrears and directing that plaintiff specifically perform his agreement with defendant for the payment of the weekly amounts of $225 until the further order of the court. Partial summary judgment shall also be entered in favor of defendant and against plaintiff in the amount of $17,550 with costs and interest from October 15, 1971.
The matter is remanded to the Chancery Division to proceed in accordance with this opinion and the rules of court.