T.C. Memo. 1999-332


UNITED STATES TAX COURT


MARIE A. GONZALES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13602-97.                     Filed October 1, 1999.


<u>Alan R. Adler</u>, for petitioner.

<u>Caroline Ades-Pierri</u> and <u>William F. Halley</u>, for respondent.


MEMORANDUM OPINION

FAY, <u>Judge</u>:  Respondent determined deficiencies of $13,656

and $7,131 in petitioner's 1994 and 1995 Federal income taxes,

respectively.  After concessions, the issue for decision is

whether petitioner must include payments from her former husband

in income under section 71.[1]  The controversy concerns the char-
acter of pendente lite support payments that petitioner received
in a divorce proceeding.

This is a fully stipulated case that was submitted without a
trial under Rule 122.  The stipulation of facts and the exhibits
are incorporated by this reference.  Petitioner, who resided in
Demarest, New Jersey, when she petitioned the Court, filed her
1994 and 1995 Federal income tax returns as a head of household.
The pertinent facts follow.

Background

Petitioner married Emelito T. Gonzales (Dr. Gonzales) in
1977; on September 21, 1995, they divorced.  During the marriage,
they had four children, whose ages in 1994 were 15, 13, 12, and 9
years.

The Gonzaleses had lived apart for more than 18 months
before petitioner filed for divorce in the Superior Court of New
Jersey, Chancery Division, Bergen County (superior court).  Both
resided in New Jersey and were represented by counsel during the
divorce proceedings.

On February 18, 1993, the superior court entered a consent
order for pendente lite support (temporary order) awarding

---

[1]All section references are to the Internal Revenue Code in
effect for the years in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure, unless otherwise
indicated.

petitioner primary residential custody of the children and directing, among other things, that Dr. Gonzales pay $7,500 a month to support his wife and four children (family support).  In relevant part, the temporary order read:

> pending the resolution of this matter * * * [Dr. Gon-zales] shall pay $7500 per month unallocated, commenc-ing on November 1, 1992 as and for support of * * * [petitioner] and the infant children of the marriage, from which sum * * * [petitioner] shall pay all family expenses including the mortgage, children's school expenses and unreimbursed medical expenses and her schooling * * *

The temporary order failed to indicate how the payments would be treated for tax purposes, whether the payments would terminate at petitioner's death, or what portion thereof represented child support.

On September 21, 1995, the Gonzaleses signed a written agreement that settled such issues as property division, alimony, and child support (settlement agreement).  Under its terms, the couple's oldest child would live with Dr. Gonzales, while the younger siblings would remain with their mother.  Beginning September 21, 1995, Dr. Gonzales agreed to pay child support of $40,000 a year ($13,333.33 per child) for 9 years, or until emancipation occurred as defined in the agreement.[2]

---

[2]The settlement agreement identified the Gonzaleses' second oldest child as having special needs whose right to child support was unaffected by the emancipation provision contained therein.

Dr. Gonzales also agreed to pay alimony for 9 years, commencing September 21, 1995, which would terminate earlier if petitioner remarried or cohabited, or if either party died. Moreover, his alimony obligation of $60,000 a year would be reduced by $10,000 every 3 years.  The settlement agreement was incorporated, but not merged, in a final judgment of divorce (divorce decree) rendered by the superior court on September 21, 1995.

Under the temporary order, Dr. Gonzales paid petitioner $90,000 in 1994 and $64,047[3] for the period January 1 through September 20, 1995; for the remainder of 1995, he paid $17,307 in alimony under the divorce decree.[4]  On her 1994 and 1995 Federal income tax returns, petitioner reported $18,000 and $29,310, respectively, as alimony income.

By notice of deficiency, respondent determined that petitioner should have reported as alimony all the payments she received under the temporary order, because "none of the [amounts] is treated as child support".  Accordingly, for each year in issue, respondent increased her income by the difference

---

[3]This amount was stipulated by the parties without further explanation.

[4]Neither party disputes that this amount was alimony.  We, therefore, limit our discussion to the undesignated payments petitioner received under the consent order for pendente lite support (temporary order).

between the amount of family support she received and the amount of alimony she reported.

Petitioner maintains that no portion of her family support payments was alimony because, under State law, Dr. Gonzales' obligation to make the payments would have survived her death. Alternatively, petitioner argues that part of the family support payments was not alimony because the settlement agreement operated to fix a portion thereof as child support. The Court agrees with petitioner's primary argument.

Discussion

We must decide whether the disputed payments are includable in petitioner's income under section 71(a). Petitioner bears the burden of proving respondent's determination wrong, which burden remains unchanged despite the fact that this case is fully stipulated. See Rules 122(b), 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. on other grounds 943 F.2d 22 (8th Cir. 1991).

Generally, alimony[5] is taxable to the recipient and deductible by the payor. See secs. 61(a)(8), 71, 215. A payment is alimony, includable in a spouse's gross income, when: (1) The payment is made in cash; (2) the payment is received by (or on behalf of) the spouse under a divorce or separation instrument;

---

[5]We use this term to include "separate maintenance payments." Sec. 71(a).

(3) the instrument does not designate the payment as nonalimony; (4) the spouses reside in separate households; (5) the spouses do not file a joint return; and (6) the payor's liability does not continue for any period after the spouse's death. See sec. 71(b)(1), (e). The payment in question must meet each criterion in order for it to be alimony.

The parties agree that the disputed payments meet the first five criteria enumerated above. We, therefore, concern ourselves with the last requirement; i.e., the termination-at-death provision. See sec. 71(b)(1)(D). The dispositive question is whether Dr. Gonzales had any "liability to make * * * [family support payments] for any period after * * * [petitioner's] death * * * and * * * [any] liability to make any payment (in cash or property) as a substitute for such payments after * * * [her] death". Id. If the payor is liable to make even one otherwise qualifying payment after the recipient's death, none of the related payments required before death will be alimony. See sec. 1.71-1T(b), Q&A-13, Temporary Income Tax Regs., 49 Fed. Reg. 34456 (Aug. 31, 1984).[6]

---

[6]Although some parts of the temporary regulations have been superseded by amendments to the Internal Revenue Code, this Q&A has not been affected.

We also note that temporary regulations have binding effect and are entitled to the same weight as final regulations. See Peterson Marital Trust v. Commissioner, 102 T.C. 790, 797 (1994), affd. 78 F.3d 795 (2d. Cir. 1996); Truck & Equip. Corp. v.

(continued...)

Whether such an obligation exists may be determined by the terms of the applicable instrument, or if the instrument is silent on the matter, by looking to State law.[7] See Morgan v. Commissioner, 309 U.S. 78, 80 (1940); Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. without published opinion 829 F.2d 39 (6th Cir. 1987); Cunningham v. Commissioner, T.C. Memo. 1994-474. The temporary order did not indicate whether the family support payments would cease at petitioner's death; hence, we turn to New Jersey law[8] to ascertain whether it would imply a postdeath legal obligation.

New Jersey has a support statute authorizing courts to award alimony (maintenance) or child support, either pending the

---

[6](...continued)
Commissioner, 98 T.C. 141, 149 (1992); see also LeCroy Research Sys. Corp. v. Commissioner, 751 F.2d 123, 127 (2d Cir. 1984), revg. on other grounds T.C. Memo. 1984-145.

[7]As the Court in Mass v. Commissioner, 81 T.C. 112, 129 (1983), recognized:

> The characterization of payments under State law is not controlling of Federal income tax consequences. * * * However, while the requirements of section 71(a) must be considered independently of State law determination, the impact of State law is squarely felt in any analysis of whether payments are made in discharge of a legal obligation. In other words, while * * * [State] law does not determine "Is this income?," it does determine "Is this a legal obligation?" * * *

[8]The parties agree that, since the temporary order was issued by a New Jersey court having proper jurisdiction of the divorce action, it is to be interpreted under New Jersey law. See N.J. Stat. Ann. sec. 2A:34-8 (West 1987).

divorce suit or after final judgment.  See N.J. Stat. Ann. sec. 2A:34-23 (West 1987) (amended 1998).  The obligation to pay alimony ends at the recipient's death, see Jacobson v. Jacobson, 370 A.2d 65 (N.J. Super. Ct. Ch. Div. 1976); Sutphen v. Sutphen, 142 A. 817 (N.J. Ch. 1928), overruled in part by Williams v. Williams, 281 A.2d 273 (N.J. 1971), while the obligation to pay child support survives the death of either spouse, see Kiken v. Kiken, 694 A.2d 557, 561-562 (N.J. 1997); Jacobson v. Jacobson, supra.  Moreover, a parent's duty to support a child terminates when the child is emancipated.  See Bowens v. Bowens, 668 A.2d 90, 92 (N.J. Super. Ct. App. Div. 1995); Mahoney v. Pennell, 667 A.2d 1119, 1121-1122 (N.J. Super. Ct. App. Div. 1995); Thorson v. Thorson, 574 A.2d 53, 54 (N.J. Super. Ct. Ch. Div. 1989).

Under the New Jersey Rules of Court, courts are required to "separate the amounts awarded for alimony or maintenance and the amounts awarded for child support, unless for good cause shown the court determines that the amounts should be unallocated." N.J. Ct. R. 5:7-4(a).  Thus, while courts are encouraged to make specific allocations of support, they are authorized to award combined spousal and child support.  Although New Jersey statutes do not say whether unallocated support payments terminate on the death of the payee spouse, a New Jersey case helps reveal the unlikelihood of that result's occurring.

In Farmilette v. Farmilette, 566 A.2d 835 (N.J. Super. Ct. Ch. Div. 1989), the New Jersey Superior Court addressed whether unallocated support orders are modifiable. The court held that they are. The Farmilettes, formerly husband and wife, obtained a divorce judgment, and Mr. Farmilette was ordered to pay $285 a week to support his ex-wife and their two children. Sometime after one child became emancipated and the other child began living full time with Mr. Farmilette, the latter sought a reduction of his unallocated support obligation, retroactive to the time of the emancipation and change of residency. Before deciding to what extent, if any, the support order should be modified, the court considered its authority to do so. It pointed to a New Jersey statute prohibiting retroactive modifications of child support.[9] The court reasoned, however, that it "will not be so presumptuous as to assume the legislators had in mind unallocated support orders which clearly are not included within the statute." Id. at 835-836. The court then held unallocated support orders modifiable and agreed to review

---

[9]The New Jersey legislature has since made minor modifications to this statute. In relevant part, the current version of N.J. Stat. Ann. sec. 2A:17-56.23a (West Supp. 1999) provides that

> No payment or installment of an order for child support * * * shall be retroactively modified by the court except with respect to the period during which there is a pending application for modification * * *

the parties' submissions to determine whether, and to what extent, a modification was warranted.

Farmilette v. Farmilette, supra, and the instant case present similar circumstances——albeit the former rests on a real, and not imaginary, event.  In each case, a divorced husband (or soon-to-be ex-husband) is ordered to pay family support.  And in each case, a terminating event occurred (child's emancipation or ex-wife's hypothetical death).  In Farmilette, the court squarely faced the issue of whether (and, if so, by how much) to vary Mr. Farmilette's family support payment beyond the terminating event.  Significant for our purposes was the court's willingness to take on that task; i.e., to review the evidence and recalculate, if necessary, the amount of family support owing following the changed situation.  The State court's willingness to do so leads to our affirmative response to the question posed here:  Is there good reason to believe that Dr. Gonzales' family support obligation would continue after petitioner's death?  We think so.  Had petitioner died before the superior court entered the divorce decree, Dr. Gonzales, as the noncustodial parent of three children, could have remained liable to pay family support, whether in full or in diminished amounts.

This Court is also mindful of the temporary nature of the order involved here——pendente lite.  As its name suggests, it is effective only during the pendency of a divorce proceeding.  When

the divorce becomes final, the pendente lite order terminates unless it provides otherwise or is reduced to judgment before- hand.  See <u>Mallamo v. Mallamo</u>, 654 A.2d 474 (N.J. Super. Ct. App. Div. 1995).  In the present case, the failure of the temporary order to say expressly whether payments thereunder cease at petitioner's death means that they terminate when the divorce becomes final, and not at the happening of any other event.

New Jersey law also recognizes that pendente lite orders are modifiable before and at the time of final judgment.  See <u>Capodanno v. Capodanno</u>, 275 A.2d 441, 445 (N.J. 1971); <u>Jacobitti v. Jacobitti</u>, 623 A.2d 794 (N.J. Super. Ct. App. Div. 1993), affd. 641 A.2d 535 (N.J. 1994); <u>Schiff v. Schiff</u>, 283 A.2d 131, 140 (N.J. Super. Ct. App. Div. 1971).  Oftentimes, such orders are modified because they are entered without a plenary hearing. See N.J. Ct. R. 5:5-4(a); <u>Schiff v. Schiff</u>, <u>supra</u>.  Only after a full trial has been held does the court have a clear picture of the parties' economic status, at which time it can reexamine the pendente lite order and amend it retroactively.  See <u>Mallamo v. Mallamo</u>, <u>supra</u> (holding that pendente lite child support may be modified retroactively after a full trial); <u>Jacobitti v. Jacobitti</u>, <u>supra</u> (holding that pendente lite alimony may be modified retroactively after a full trial).

These things taken together suggest that New Jersey law would not necessarily have relieved Dr. Gonzales of his obliga-

tion to pay family support had petitioner died before the divorce judgment. The fact that the unallocated support order is modifiable and temporary tells us, at the least, that a court might have reduced Dr. Gonzales' payments rather than terminate them altogether. Indeed, there are no counterindications. Accordingly, we hold that the requirement of section 71(b)(1)(D) has not been met and, therefore, all payments received by petitioner under the temporary order are not alimony.[10]

We have considered the parties' other arguments and find them unpersuasive.

To reflect concessions and our conclusion herein,

Decision will be entered

under Rule 155.

---

[10]We need not and do not characterize the disputed payments other than to hold that they were not alimony.

This holding comports with our conclusions reached in prior opinions addressing the characterization of "family support". See, e.g., Miller v. Commissioner, T.C. Memo. 1999-273 (holding that, in Colorado, family support paid under a temporary order is not alimony); Wells v. Commissioner, T.C. Memo. 1998-2 (holding that, in California, family support payments are not alimony); Murphy v. Commissioner, T.C. Memo. 1996-258 (holding that, in California, family support payments are not alimony).